### In re W & L ASSOCIATES, INC., Debtor.

### Bankruptcy No. 86–04999S.

United States Bankruptcy Court, E.D. Pennsylvania.

June 18, 1987.

Norman S. Berson, Philadelphia, Pa., for Buyer.

Jonathan H. Ganz, Gary R. Kozik, Philadelphia, Pa., for debtor.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us is an epilogue to our Opinion and Order of April 6, 1987, in the above-entitled matter, reported at 71 B.R. 962, in which we granted a Motion of the Debtor to Reject an Agreement to sell a parcel of vacant land located at 616–24 South 7th Street, Philadelphia, Pennsylvania 19147, to Richard Zeghibe (hereinafter referred to as "the Buyer"). We herein deny a Motion for Extension of Time for Appeal (hereinafter referred to as "the Extension Motion") filed by the Buyer because we fail to find that the applicable extremely strict standard for showing "excusable neglect" in filing this late appeal has been met.

On April 6, 1987, we mailed copies of our Opinion and Order of that date to Counsel for both parties. The single copy forwarded to the Buyer's Counsel was addressed as follows:

Mark I. Bernstein, Esq.

Norman S. Berson, Esq.

19th Fl., 1618 Walnut St.

Philadelphia, PA 19103

We also addressed the mailing because Mark I. Bernstein was the member of the firm of Hunt and Fineman, P.C., who had tried the case, and Norman S. Berson was another member of the firm whose name appeared on most of the pleadings.

On April 8, 1987, Mark I. Bernstein was sworn in as a Judge of the Court of Common Pleas of Philadelphia County.[1] On April 17, 1987, one day after the ten-day normal appeal period had expired, see Bankruptcy Rule (hereinafter referred to as "B.R.") 8002(a), the Buyer filed a Notice of Appeal of our Order of April 6, 1987. On April 21, 1987, the Extension Motion before us was filed by Mr. Berson. The pertinent allegations of the Extension Motion, quoted verbatim by us, in pertinent part, were as follows:

1. We note that the local legal newspaper reported that Judge Bernstein was sworn in on April 24, 1987. Legal Intell., April 24, 1987, at 1 col. 5. However, we accept the statements of the Buyer's counsel, supported by a copy of the

3. Mark I. Bernstein received a copy of the Order and the accompanying Opinion of the Court on April 7, 1987.

4. On April 8, 1987, Mark I. Bernstein, with little advance notice, was sworn in as Judge of the Court of Common Pleas of Philadelphia, thereby requiring him to discontinue his practice of law.

5. The sudden judicial appointment of Mark I. Bernstein required substantial reassignments of his cases within the firm of Hunt & Fineman, P.C., beginning on April 8, 1987, the date on which he was sworn in.

6. As a result of the foregoing, Counsel for the Buyer was unable to file a Notice of Appeal with this Court until April 17, 1987.

7. Based on the foregoing, the filing of the Notice of Appeal only one day after expiration of the 10–day period for appeal constitutes excusable neglect.

B.R. 8002(c), which provides as follows, indisputably controls whether the Extension Motion should be granted by us:

(c) EXTENSION OF TIME FOR APPEAL. The bankruptcy court may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, *except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect* if the judgment or order appealed from does not authorize the sale of any property or the obtaining of credit or the incurring of debt under § 364 of the Code, or is not a judgment or order approving a disclosure statement, confirming a plan, dismissing a case, or converting the case to a case under another chapter of the Code. (emphasis added).

Constitutional Oath of Office signed by Judge Bernstein, that in fact he was appointed on April 8, 1987, and merely ceremoniously sworn in April 24, 1987.

After briefly hearing argument from the Buyer and the Debtor on the Motion, we requested the parties to simultaneously file briefs on or before May 29, 1987, in support of their respective positions on the pertinent issue of whether the circumstances set forth in the Motion constituted the requisite "showing of excusable neglect" when a request is made, within the 20–day period after the entry of an Order, to extend the normal 10–day appeal time. We then independently did research on the issue. This matter was inexplicably rescheduled for a hearing on June 3, 1987, and, at that time, we indicated to the Buyer's counsel that our research had not turned up *any* cases where "excusable neglect" had been found to have been shown under B.R. 8002(c), and *many* cases to the contrary, and invited him to remit any citations of cases where there had been a finding of "excusable neglect" pursuant to this Rule. In response, counsel presented us with four citations, *McVicker v. Donnelly*, 95 F.R.D. 353 (E.D.Pa.1982); *Pizzichil v. Motors Insurance Co.*, 90 F.R.D. 119 (E.D.Pa.1981); *Caruso v. Drake Motor Lines, Inc.*, 78 F.R.D. 586 (E.D.Pa.1978); and *In re Wallace*, 12 B.R. 938 (Bankr.E.D.Pa.1981). Unfortunately for the Buyer, none of these cases involves 8002(c) and all are distinguishable on this basis and on the other bases, as we indicate below. We therefore must conclude that the circumstances alleged in the Motion, even if assumed to be completely true, do not meet the very strict standards for a "showing of excusable neglect" contemplated by Rule 8002(c).

Our starting point is from the pronouncements of our local Court of Appeals that the Rule 8002 time-limits are "strictly construed and ... jurisdictional in effect." *Whitemere Development Corp. v. Township of Cherry Hill*, 786 F.2d 185, 187 (3d Cir.1986). *See also, e.g., In re Souza*, 795 F.2d 855, 857 (9th Cir.1986); *In re Universal Minerals, Inc.*, 755 F.2d 309, 311–12 (3d Cir.1985); and *Twins Roller Corp. v. Roxy Roller Rink Joint Venture*, 70 B.R. 308, 310 (S.D.N.Y.1987).

The concept of "excusable neglect" arises in numerous contexts other than appeals. However, in appeals alone does the principal that time limits are strictly construed apply. In one other example, i.e., the late filing of a Proof of Claim, Judge Fox of this Court recently held that the term "excusable neglect" generally "has been narrowly defined and is limited to those situations where the failure to act timely was due to circumstances beyond the ... control [of the party invoking it]." *In re Stern*, 70 B.R. 472, 475 (Bankr.E.D. Pa.1987). However, as the *Wallace* case cited by the Buyer's counsel suggests, there are contexts where the concept of "excusable neglect," while not applied loosely, is not applied so strictly as in appeals. Thus, in *Wallace*, this court found "excusable neglect" to excuse the failure to timely serve an objection to a lien avoidance Motion where the Objection was timely filed.

We believe that strictness in the standard of interpretation of "excusable neglect" is considerably heightened in the context of Rule 8002(c) because "the extension of an appeal period involves jurisdictional issues and affects the successful party's and the public's interest in seeing an end come to litigation; ..." *In re Washington County Broadcasting, Inc.*, 39 B.R. 77, 79 (Bankr.D.Me.1984). This rigidity has also been explained by the peculiar need for expedient administration of bankruptcy cases, *In re Nucorp Energy, Inc.*, 812 F.2d 582, 584 (9th Cir.1987), which is hampered by the presence of outstanding belated appeals. *Compare In re Campfire Shop, Inc.*, 71 B.R. 521, 523–24 (Bankr.E.D.Pa. 1987) (this Court applies time deadlines of B.R. 9023 and F.R.Civ.P. 59(e) strictly because these time periods are found to be jurisdictional).

Probably because of the application of these consideration to cases before them, we have, even with the assistance of the Buyer's counsel, located *no* case in which any court has found the requisite "showing of excusable neglect" to have been established for purposes of 8002(c). On the other hand, we have found a plethora of cases in which, in circumstances we would consider more compelling than those alleged in the instant Motion, courts have failed to

find such a "showing." *See, e.g., In re Smith*, 38 B.R. 685 (N.D.Ohio 1982) (Counsel unable to contact client within ten-day limit and then erroneously filed appeal in the Court of Appeals); *In re Hilliard*, 36 B.R. 80 (S.D.N.Y.1984) (counsel claimed that copy of order was never sent to him); *In re Zeller*, 38 B.R. 739 (9th Cir.Bankr. App.1984) (allowance of appeal filed one day late because counsel was on vacation reversed); *In re Smith*, 44 B.R. 46 (Bankr. D.N.M.1984) (appeal filed one business day late because client could not render decision to appeal in time); *In re Tinnell Traffic Services, Inc.*, 43 B.R. 280 (Bankr.M.D. Tenn.1984) (appeal filed two days late because firm representing appellant reassigned matter to an associate unaware of time deadline); *Washington County, supra* (order sent to appellant's previous counsel, who belatedly forwarded it to present counsel); *In re Schmidt*, 34 B.R. 284 (Bankr.D.Minn.1983) (appeal papers mailed in period in which it would ordinarily have arrived at court in timely fashion, but mail was inexplicably delayed); *In re Sheldon's Inc. of Maine*, 34 B.R. 277 (Bankr.D.Me.1983) (appeal was not filed because the order appealed was misfiled when received by counsel); and *In re Wildflower Landholding Assoc., Ltd.*, 34 B.R. 4 (Bankr.M.D.Fla.1983) (counsel was absent from office due to birth of child when order was entered and mailed to office).

The other cases cited by the Buyer in addition to *Wallace, supra,* which we have already distinguished, can also be readily distinguished. Two, *McVicker* and *Caruso,* involved motions to open default judgments pursuant to Federal Rule of Civil Procedure (hereinafter referred to as "F.R. Civ.P") 60(b). There, in keeping with a policy that a litigant should have at least one opportunity to litigate a cause on the merits, the courts were indulgent with counsel who failed to file responsive pleadings in timely fashion. *Compare Medunic v. Lederer,* 533 F.2d 891, 893–94 (3d Cir. 1976), *with Whitemere Development* and *Universal Minerals, supra.*

In *Pizzichil, supra,* at issue was an appeal from arbitration. The court accepted the appellant's assertion that he had mailed a "demand for a trial de novo" to the court from an address about a mile away six days before the applicable deadline had run, but it had inexplicably not arrived until two days after the deadline had run. These facts are reminiscent of, but more compelling than those in *Schmidt, supra,* where the appellant had mailed the notice of appeal from a distant locus two days before the deadline had run. One distinction justifying the difference of the result in these two cases is the need to promote expedient administration of bankruptcy cases. Another distinction is the facts, because it was rather apparent that some sort of totally unanticipated snafu had occurred in *Pizzichil,* which made the dependence on counsel that his mailing would be timely reasonable and the failure of the mail to arrive more excusable on his part.

We must observe that we do not find the facts here as compelling as those in *Pizzichil* or several of the 8002(c) cases where "excusable neglect" was *not* found. Most notably, we believe that the circumstances alleged here are comparable to, but are less compelling than, those in *Washington County, Tinnell Traffic,* and *Sheldon's, supra.* Here, the Opinion and Order was properly mailed by the court to the Buyer's Counsel on April 6, 1987. It was probably misdirected to Judge Bernstein instead of Mr. Berson, to whom it was also addressed, by someone employed in the firm of Hunt and Fineman, P.C. The Motion appears to imply that Judge Bernstein received the Opinion and Order, but simply failed to note its particular urgency, which is a human error attributed to the Buyer's counsel. The Motion also fails totally to explain why, when Judge Bernstein's cases were reassigned on April 8, 1987, other members of the firm were "unable" to file the appeal until April 17, 1987. No notation that all notices should be directed only to Mr. Berson had been filed by the firm of the Buyer's counsel with the Clerk's Office, as contemplated by Local Rule 9010.1(b), (d), and which should have prevented our addressing the mailing, even in the alternative, to Judge Bernstein. We also note that notice of our decision was published in

the local legal newspaper on April 9, 1987, Legal Intell., April 9, 1987, at 2, col. 4, where it could have been observed by Judge Bernstein, or Mr. Berson, or any member of Hunt and Fineman, P.C., who could reasonably have anticipated that the decision would be forthcoming and checked the newspaper, or even by the Buyer himself. Errors by clerical personnel in the office of appellant's counsel, unreported changes of counsel, reassignment of a case to different counsel, or the combination of the above, all of which were elements of "showing of excusable neglect" here, have been held, in the cases interpreting 8002(c), to be, in isolation, insufficient as a matter of law to satisfy that term, in the context of that particular Rule. We see no reason why we should reject all prior authority on relatively weak facts.

We see no reason why we should reject all prior authority on relatively weak facts.

We therefore believe that we must deny the Buyer's Motion. An appropriate Order will issue.