In re Miguel V. APONTE, Debtor.

Miguel V. APONTE, Plaintiff,

v.

Walter AUNGST, Jr., Defendant.

Bankruptcy No. 85–03157T.
Adv. No. 85–0844.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 23, 1988.

See also, Bkrtcy., 82 B.R. 738.

Kevin J. Kelleher, Bethlehem, Pa., for defendant.

Judith L. Jones, Lehigh Valley Legal Services, Allentown, Pa., for plaintiff/debtor.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Twenty eight (28) days after we entered an order against defendant Walter Aungst, Jr. ("defendant") based on his violations of 11 U.S.C. § 362, defendant filed a motion for leave to extend the appeal period. Plaintiff Miguel V. Aponte ("plaintiff") has filed an objection, alleging that defendant has not shown the excusable neglect required by N.B.R. 8002(c). We agree with plaintiff and deny defendant's motion.

■ Rule 8002(c) creates a two-tiered system for evaluating motions for leave to appeal. If the motion is filed within the appeal period, the court may grant the

extension. If the motion is filed no more than twenty (20) days after the expiration of the appeal period, the court may grant the extension if movant makes a showing of excusable neglect.[1] N.B.R. 8002(c). The failure to file a notice of appeal in timely fashion is a jurisdictional defect barring appellate review. *In re Universal Minerals, Inc.*, 755 F.2d 309, 310 (3rd Cir. 1985); *Doyle v. Paolino (In re Energy Savings Center, Inc.)*, 61 B.R. 732, 737 (E.D.Pa.1986), aff'd 810 F.2d 1162, 1164 (3rd Cir.1987); *Ganz v. Kovatech Corp (In re Wicaco Machine Co., Inc.)*, 60 B.R. 415, 417 (E.D.Pa.1986), aff'd 806 F.2d 252, 256 (3d Cir.1986). As a result, N.B.R. 8002 is strictly construed. *In re Universal Minerals, Inc.*, 755 F.2d 309, 311; *In re W & L Associates, Inc.*, 74 B.R. 681, 683 (Bankr.E.D.Pa.1987). Because N.B.R. 8002 is jurisdictional in character, the concept of excusable neglect developed under that rule should not be interchanged with the concept of excusable neglect developed under Fed.R.Civ.P. 60.[2] The resolution of an appeal has a more direct impact on the public interest in "seeing an end come to litigation." *In re W & L Associates*, 74 B.R. 681, 683, *quoting In re Washington County Broadcasting, Inc.*, 39 B.R. 77, 79 (Bankr.D.Me.1984). Thus, although we have espoused our circuit's liberal view of Fed.R.Civ.P. 60(b), we will not afford N.B.R. 8002(c) motions for extension the same broad interpretation. *See e.g., Tamarkin v. Wells (In re Wells)*, 87 B.R. 862 (Bankr. E.D.Pa.1988).

As a result of the strict interpretation used in these N.B.R. 8002 cases, there are virtually no cases in which recalcitrant counsel have mounted successful allegations of excusable neglect. One notable exception is *In re William B. Kessler, Inc.*, 29 B.R. 358 (Bankr.S.D.N.Y.1983) in which a combination of circumstances gave rise to a finding of excusable neglect:

(t)he extreme illness of the partner in charge of the case, the confusion caused

---

**1.** The Rule excludes appeals from orders authorizing the sale of property, the obtaining of credit, the incurring of debt or orders approving disclosure statements, confirming plans or dismissing or converting cases. N.B.R. 8002(c).

**2.** Fed.R.Civ.P. 60 allows relief from judgment or orders for "... mistake, inadvertence, surprise or excusable neglect." Fed.R.Civ.P. 60(b)(1).

by the merger and relocation of the ... law offices, the inability to locate the case file, the prompt action taken to rectify the situation, the magnitude of the controversy, the brevity of the delay, and the absence of prejudice to the appellee ...

*Id.* at 359. In light of recent decisions within this circuit, *see e.g., In re W & L Associates, Inc.,* 74 B.R. 681, it is not at all certain that we would have reached the same conclusion as was reached by the *Kessler* court. We need not decide that question, however, because the instant facts are far less compelling.

■ Defendant's attorney testified that he received our February 19th opinion on February 22nd, the date on which he became attached for trial in a lengthy state court proceeding. He avers in his motion that he became attached for trial on February 23rd, and in his memorandum that this key date was February 21, 1988. He also testified that he is a sole practitioner, and that his secretary accompanied him as his assistant. The trial ended on March 1st, and counsel testified that he was unable to review the opinion until March 2, 1988. At that time he *mailed* a copy of the opinion to his client, with the request that the client review it and respond. He did not meet with his client until March 14th, and appeared in chambers on March 17th bearing an order which would have extended the appeal period based on his "excusable neglect." We reminded counsel that he had not filed an underlying motion, notified opposing counsel or appeared at a hearing, and we therefore refused to sign the order. On March 18th he filed a formal motion, and the matter was heard after he effected proper service.

The most significant part of this saga is. what counsel fails to state or explain. Counsel would have us believe that he did not review the opinion until March 2nd because he did nothing in that time period other than attend his other trial. Attorneys, even sole practitioners, simply do not fail to address all other client files when engaged in litigation.

Counsel's argument that he could not review our opinion until March 2nd is belied by his testimony that the opinion was received in his office on February 22nd. It is implausible that counsel was totally unaware of the daily flow of paperwork for that week long period. Whether he wanted to take time to contact defendant to discuss the possibility of appeal is another question, but he could, at the very least, have sent out a copy of the opinion.

Counsel's response after the end of the state court trial was less than active. Instead of calling his client on March 2nd to discuss the appeal problem, he sent a letter. It took him nearly two weeks to meet with his client, and his first attempt to remedy the situation illustrated a complete disregard for the rules of procedure. These are not the uniquely compelling circumstances presented in *Kessler.*

We will, however, analyze each separate element of this situation, as suggested by our Court of Appeals. *See Consolidated Freightways Corp. of Delaware v. Larson,* 827 F.2d 916 (3d Cir.1987). In *Larson,* the court reviewed Fed.R.App.Proc. 4(a), from which Rule 8002 is derived,[3] and concluded that:

> ... a thoughtful analysis of this issue in a particular context will, at a minimum, require a weighing and balancing of the following factors: (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure, *Campbell v. Bowlin,* 724 F.2d 484 (5th Cir.1984) (failure to read rules of procedure not excusable); (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, *Airline Pilots v. Executive Airlines, Inc.,* 569 F.2d 1174 (1st Cir.1978) (mistake in diarying counsel's calendar not excusable); (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence, *United States v. Commonwealth of Virginia,* 508 F.Supp. 187 (E.D.Va.1981) (failure to arrange coverage during attorney's vaca-

---

**3.** *See* N.B.R. 8002, Advisory Committee Note.

tion which encompassed end of appeal period not excusable); (4) whether the inadvertence reflects a complete lack of diligence, *Reinsurance Co. of America, Inc. v. Administratia,* 808 F.2d 1249 (7th Cir.1987); or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

*Id.* at 919.

First, the instant record does not allow us to rule on counsel's competence. We do, however, chastise defendant's counsel for attempting to contact the court, *ex parte,* with the goal of securing entry of an order (with no motion attached thereto) which would have granted an extension, thereby precluding his opponent from raising the excusable neglect issue.

Second, however, attachment for trial is not an "easily manufactured excuse." By the same token, when we consider the third *Larson* factor, we hold the events underlying this matter were readily foreseeable. Courts have not found excusable neglect when counsel's inability to act in a timely fashion was the result of an absence related to the birth of a child, *In re Wildflower Land Holding Assoc. Ltd.,* 34 B.R. 4, 5 (Bankr.M.D.Fla.1983), or counsel's vacation, *Elias v. Zeller (In re Zeller),* 38 B.R. 739, 742 (9th Cir.BAP 1984). Even failure to act caused by unanticipated events, such as a serious illness in the debtor's family, has not given rise to a finding of excusable neglect. *See e.g., In re DiDio,* 1 B.R. 196, 199 (Bankr.E.D.Pa.1979) (interpreting former Rule 802). Clerical oversight, another unanticipated event, does not create excusable neglect. *Oregon v. Champion Intl. Corp.,* 680 F.2d 1300, 1301 (9th Cir.1982).

While we are sympathetic to the demands of litigation, such is a foreseeable consequence of practicing law and such an excuse does not rise to the level of N.B.R. 8002 excusable neglect. *See e.g., Rowles, Winston & Co. v. T.C. Morrow (In re T.C. Morrow),* 564 F.2d 189, 190 (5th Cir.1977) (interpreting former Rule 802(c)); *In re Uiterwyk Corp.,* 57 B.R. 166 (Bankr.M.D. Fla.1986) (press of other business not excusable neglect even under the more liberal Rule 60(b) standard). When counsel's inability to act is the result of events that could reasonably have been anticipated, courts will not find excusable neglect.

In applying the fourth and fifth elements of the *Larson* analysis to these facts, we conclude that counsel's inadvertence reflected a complete lack of diligence and that his actions did not constitute "substantial good faith efforts" toward compliance. Assuming he had been completely unaware until March 2nd of the order which had been sitting on his desk since February 20th, the potential of a jurisdictional defect and the magnitude of the underlying order warranted a more immediate response.

Defendant's counsel argues that we must take a two step approach and review the merits of the defense and the prejudice resulting from an adverse decision. *In re Smith,* 44 B.R. 46, 48 (Bankr.D.N.M.1984). Specifically, he argues that his client would be severely prejudiced by our refusal to extend the appeal period because the underlying order awarded plaintiff, among other things, treble damages. We cannot accept that the sheer magnitude of our underlying order should prompt a finding of excusable neglect when counsel's actions were less than diligent. The development of the term "excusable neglect" within the case law does not support such a holding. We suspect that the *Smith* court was confusing the N.B.R. 8002 excusable neglect standard with the standard applied to Fed. R.Civ.P. 60(b) motions. In the latter, courts consider (1) whether the default occurred as a result of defendant's culpable conduct, (2) whether plaintiff will be prejudiced if the default is lifted, and (3) whether defendant has a meritorious defense. *Zawadski de Bueno v. Bueno Castro,* 822 F.2d 416, 419–20 (3d Cir.1987). Additionally, requiring a court to determine whether the amount of an award creates prejudice would choke courts with extraneous facts and issues centered on the hardship caused by an award. We also have severe due process concerns about this type of analysis; it is thoroughly possible to envision two cases, one with a wealthy defendant and one with a poor defendant, in which

counsel committed the same error. Under this hardship analysis, the poor defendant might be granted an extension to appeal while his wealthier counterpart was saddled with an expired appeal period. Defendant has presented no authority to support the proposition that sole practitioner should be held to a lesser standard of diligence required of all attorneys. We have considered counsel's conduct in light of the *Larson* standards and hold that this sole practitioner has simply failed to sustain his burden of showing excusable neglect under all of the relevant circumstances.

An appropriate order follows.