**In re SPRINGFIELD CONTRACTING CORP., Debtor.**

**Kevin R. HUENNEKENS, Trustee, Plaintiff,**

**v.**

**James H. MARX, Sr. and James H. Marx, Jr., Defendants.**

**Bankruptcy No. 89–02057–RS. Adv. No. 92–3025.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

July 6, 1993.

William H. Schwarzschild, III, Williams, Mullen, Christian & Dobbins, Richmond, VA, for plaintiff.

Joseph W. Kaestner, Kaestner and Associates, Richmond, VA, for defendant.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the motion of the defendant, James H.

Marx, Jr., to file a late notice of appeal. By order entered April 22, 1993, the Court allowed the trustee to recover from the defendant certain fraudulent conveyances, a preferential transfer, and unauthorized post-petition transfers. The defendant missed by one day the deadline for filing a notice of appeal and now seeks to have the Court grant an extension of time to file a notice of appeal under the "excusable neglect" provision of Federal Rule of Bankruptcy Procedure 8002(c). At the conclusion of a hearing on this matter held on May 18, 1993, the Court requested briefs on the applicability of the recent Supreme Court decision of *Pioneer Investment Services v. Brunswick Associates*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) to the facts of the case at bar. After a review of the argument and post-hearing briefs filed by counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor, Springfield Contracting Corp., filed a petition for relief under Chapter 11 on August 30, 1989. Kevin R. Huennekens, trustee for the bankruptcy estate, filed his complaint on February 10, 1992, to recover preferential, unauthorized, voluntary or fraudulent transfers under 11 U.S.C. §§ 547, 550, 549, 544(b), and 548 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"). This Court entered an order on November 13, 1992, dismissing James H. Marx, Sr., as a defendant. By order entered April 22, 1993, the Court allowed the trustee to recover a total of $95,342.22 from James H. Marx, Jr. ("Marx" or "defendant"). On May 4, 1993, defendant filed a notice of appeal and a motion to permit the defendant to file a late notice of appeal.

Federal Rule of Bankruptcy Procedure ("Rule") 8002(a) provides that the notice of appeal shall be filed with the clerk within 10 days of the date of entry of the judgment, order, or decree appealed from. Fed. R.Bankr.Pro. 8002(a). Ten days from the April 22 entry date was Sunday, May 2, 1993. Rule 9006(a) provides that when the last day prescribed under the Rules for any act to be performed falls on a Sunday, the period runs until the end of the next day. Fed.R.Bankr.Pro. 9006(a). Therefore, the time for filing the notice of appeal ran through Monday, May 3, 1993. Marx did not file a timely motion to extend the time for filing a notice of appeal as provided in Rule 8002(c). The notice of appeal filed on Tuesday, May 4, 1993, was one day late.

Marx explains this tardiness by stating that his counsel did not receive the order and memorandum opinion until April 26, 1993, and did not provide him a copy until April 27, 1993, six full days before the deadline for filing notice of appeal. Marx's counsel stated he was very busy, having scheduled six trials in other cases for the business week of April 26 through April 30. Counsel scheduled an appointment to meet with Marx at 2:00 p.m. on Monday, May 3, 1993. At an undetermined time, defendant's counsel discovered that his calendar for May 3, 1993, was in error. A trial in another matter listed for 9:00 a.m. actually was scheduled for 1:00 p.m. That trial lasted from 1:00 to 4:00 p.m. Defendant's counsel and defendant changed their meeting to May 4, 1993. Marx argues that his late filing was due to excusable neglect.

Rule 8002(c) provides that, after the time for filing a notice of appeal has expired, the bankruptcy judge may extend the time for filing the notice of appeal for a period not to exceed twenty days, if a request is made within that twenty-day period and there is a "showing of excusable neglect." Fed. R.Bankr.Pro. 8002(c). In the case at bar, the defendant filed his motion to permit a late notice of appeal on the first day of the twenty-day period, clearly meeting the time limit in Rule 8002(c). The remaining question is, therefore, whether there has been "a showing of excusable neglect."

Marx argues that a recent United States Supreme Court decision which interpreted the "excusable neglect" standard under Rules 3003(c)(3) and 9006(b)(1) for filing late proofs of claim also defines the "excusable neglect" standard under Rule 8002(c) that this Court should apply to the filing of late notices of appeal. *See Pioneer Inv. Services v. Brunswick Asso.*, —— U.S. ——,

113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Court in *Pioneer* rejected a narrow view of the definition of "excusable neglect," which required a showing of exceptional circumstances beyond the movant's control, and opted for an equitable determination,

> taking account of all relevant circumstances surrounding the omission. These include ... the danger of prejudice to the [non-movant], the length of delay, and its impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at ——, 113 S.Ct. at 1498. Marx argues that its late filing met the *Pioneer* standard of excusable neglect.

The trustee argues that the liberal standard for excusable neglect under *Pioneer* does not control in this case, as *Pioneer* "resolved the excusable neglect standard under Rule 9006(b)(1) *only,* [—— U.S. at —— n. 3], 113 S.Ct. at 1494 n. 3." Brief of Trustee at 4 and n. 3 (emphasis in original). The trustee argues that the Supreme Court specifically excluded Rule 8002 from the "excusable neglect" standard of Rule 9006(b)(1). *Id.* at 6 n. 6. (citing *Pioneer,* at —— n. 4, 113 S.Ct. at 1495 n. 4). The trustee urges the Court to apply a "narrow" standard, requiring extraordinary circumstances beyond the defendant's control, for a finding of excusable neglect under Rule 8002(c). *See Fasson v. Magouirk (In re Magouirk),* 693 F.2d 948, 950–51 (9th Cir.1982) (applying a "narrow" standard to 8002(c), while applying a more liberal standard to Rule to 9006(b)(1)). The trustee argues that defendant has not met the narrow standard as the circumstances of this case are not extraordinary nor beyond its control. In the alternative, he argues that even if the Court applies the liberal *Pioneer* standard, Marx has not met that standard, as defendant's late filing was not the result of neglect, but rather of a conscious disregard of the procedural rules.

## CONCLUSIONS OF LAW

I. Does *Pioneer* Apply to Rule 8002(c)?

The *Pioneer* opinion, a 5–4 decision over a strong dissent, specifically addresses the interpretation of "excusable neglect" in Rule 9006(b)(1), the general time limit enlargement rule as applied to the period specified in Rule 3003(c)(3) for filing Chapter 11 proofs of claim. *See* Fed.R.Bankr. Pro. 3003(c)(3) and 9006(b). Rule 3003(c)(3) does not set a specific time limit for filing proofs of claim, but rather mandates that "the court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Fed. R.Bankr.Pro. 3003(c)(3). Rule 9006(b)(1) states that "the court for cause shown may at any time in its discretion ... (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed.R.Bankr.Pro. 9006(b)(1), (2). In the *Pioneer* case, the creditor missed the court imposed deadline when its attorney failed to file its proof of claim by the bar date contained in a "Notice of Meeting of Creditors" mailed to the creditor.

As Rule 9006 generally enlarges the time period for filing Chapter 11 proofs of claim under Rule 3003(c), Rule 9006 also enlarges the time period for filing notices of appeal under Rule 8002, but "only to the extent and under the conditions stated in those rules." Fed.R.Bankr.Pro. 9006(b)(3). Unlike Rule 3003(c)(3), which allows the bankruptcy court to set the time to file proofs of claim, Rule 8002(a) pronounces a strict 10 day deadline for filing a notice of appeal as of right. Fed.R.Bankr.Pro. 8002(a). Rule 8002(c) places specific time restrictions on the extension of time to file a notice of appeal, stating in pertinent part:

> A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired [10 days from date of entry of judgment (Rule 8002(a))], except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect....

Fed.R.Bankr.Pro. 8002(c). According to Rule 8002(c), upon expiration of 30 days

from the entry of judgment, the 10 day appeal period plus the 20 day extention, the bankruptcy court may not under any circumstances permit the filing of a late notice of appeal.

It appears to this Court that Rule 8002, the rule in operation in the case at bar, is much more strict than Rule 9006 discussed in *Pioneer*. Unlike Rule 3003, Rule 8002 does not allow the court to set the time to file a notice of appeal. Nor does it allow the court in its discretion at any time after the expiration of the 30 day period to permit a late filing. Only upon a showing of excusable neglect in a motion filed within 20 days of the initial 10 day appeal period may the bankruptcy court extend the time to file a notice of appeal. Congress set the deadline Marx missed, which can be found in Federal Rule of Bankruptcy Procedure 8002. Marx makes no argument that his counsel was unaware of that deadline. However, it appears to this Court that, in spite of the difference between the discretionary rule discussed in *Pioneer* and the strict rule applicable to this case, and in spite of the easily distinguishable facts of these two cases, the Supreme Court would apply the same analysis of excusable neglect in *Pioneer* to the excusable neglect language found in Rule 8002(c).

The trustee argues that the Supreme Court resolved the excusable neglect standard under Rule 9006(b)(1) only and that *Pioneer* does not apply to this case. The trustee bases his argument on what appears to be an inconsistency in *Pioneer*. In footnote 4, the Supreme Court seems to exclude the *Pioneer* analysis of excusable neglect from operation on Rule 8002. The trustee points out that in footnote 4 the

*Pioneer* opinion focuses on Rule 9006(b)(3)[1] which limits the general power of Rule 9006 to enlarge the time limits fixed in certain enumerated rules: "Subsections (b)(2) and (b)(3) of Rule 9006 enumerate those time requirements *excluded from the "excusable neglect" standard."* *See* ‒‒ U.S. at ‒‒ n. 4, 113 S.Ct. at 1494 n. 4 (emphasis added). Rule 8002 is one of "those time requirements" enumerated in 9006(b)(3) upon which the general enlargement power of Rule 9006 is limited "to the extent and under the conditions stated in those rules." *See* Rule 9006(b)(3); note 1, *supra*. The trustee argues that this Court should hold that footnote 4 in *Pioneer* excludes Rule 8002 from the *Pioneer* excusable neglect standard.

However, Rule 8002 contains the same excusable neglect language found in Rule 9006 and discussed in *Pioneer*. In pertinent part, the two rules read:

> the court for cause shown may . . . in its discretion—
>
> (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.Pro. 9006(b)(1).

> a request made no more than twenty days after the expiration of the time for filing a motion of appeal may be granted upon a showing of excusable neglect. . . .

Fed.R.Bankr.Pro. 8002(c). It appears to this Court that the wording of Rules 9006(b)(1) and 8002(c) reveals no substantive difference in the "excusable neglect" language. In addition, the text of *Pioneer* discusses various other rules containing

---

**1.** Rule 9006(b)(3) reads:

(3) Enlargement Limited. The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), *8002*, and 9033, only to the extent and under the conditions stated in those rules. Fed.R.Bankr.Pro. 9006(b)(3) (emphasis added) *cited in Pioneer,* ‒‒ U.S. at ‒‒ n. 4, 113 S.Ct. at 1494 n. 4. In footnote 4 of *Pioneer,* the Supreme Court explains how Rule 9006(b)(3) excludes Rule 3002(c), the time requirement governing the filing proofs of claim in Chapter 7 cases, from the excusable neglect standard of Rule 9006, and points out that Rule 9006(b)(3)

does not exclude Rule 3003(c), which governs the filing of Chapter 11 proofs of claims. at ‒‒ n. 4, 113 S.Ct. at 1494 n. 4.

This Court notes that Rule 3002(c) does not contain its own excusable neglect language. However, the time requirements of Rule 8002 and Rule 9033, which Rule 9006(b)(3) excludes from the general enlargement power of Rule 9006, do contain their own excusable neglect language. The Supreme Court does not specifically say how Rule 9006(b)(3) excludes Rules 8002 and 9033 from the excusable neglect analysis of *Pioneer*.

similar "excusable neglect" language, such as Rules 6(b), 13(f), and 60(b)(1). *Pioneer*, at ———–———, 113 S.Ct. at 1496–97. The opinion even mentions former Local Rule 15(2) of the Second Circuit Court of Appeals in which excusable neglect language governs the late filing of appeals, the exact issue before this Court. *See id.* at —— n. 11, 113 S.Ct. at 1498 n. 11.

The Supreme Court granted certiorari because of a conflict in the courts of appeals over the meaning of "excusable neglect," and in footnote 3 mentions the conflict between the circuits over Rule 4(a)(5) of the Federal Rules of Appellate Procedure. *Id.* at —— n. 3, 113 S.Ct. at 1494 n. 3 (citations omitted). Federal Rule of Appellate Procedure 4(a)(5), along with the excusable neglect language found in it, is the direct ancestor of Rule 8002. *See* Fed.R.Bankr. Pro. 8002, Advisory Committee Note (Bankruptcy Rule 8002 "is an adaptation of Rule 4(a) of the Federal Rules of Appellate Procedure"). The excusable neglect language of Rule 4(a)(5) and Rule 8002 are identical, as is the appellate procedure policy behind both rules. For these reasons, this Court concludes that the Supreme Court would find that a conflict over the meaning of "excusable neglect" in Appellate Rule 4(a)(5) would be the same for Bankruptcy Rule 8002(c).

In view of the similar excusable neglect language in Rules 8002 and 9006, the Supreme Court's concern over conflicts in the circuits over the meaning of excusable neglect found in both Rule 9006 and Appellate Rule 4(a)(5), and the strong affinity between Rule 4(a)(5) and Rule 8002, and the discussion in *Pioneer* of similar phrases in other rules, it appears to this Court that the *Pioneer* Court would apply the same "excusable neglect" analysis to Rule 8002(c) that it did to 9006(b). This Court cannot accept the trustee's argument that the Supreme Court would discuss throughout the text and in footnotes 3 and 11 of *Pioneer* the meanings of many rules containing excusable neglect language, yet in footnote 4 specifically exclude from its analysis the same language found in Rule 8002. *Compare* at —— n. 3, ———–———, —— n. 11, 113 S.Ct. at 1494 n. 3, 1496–97,

1498 n. 11 *with id.* at —— n. 4, 113 S.Ct. at 1494 n. 4. This Court finds that the Supreme Court never intended to specifically exclude Rule 8002 from the discussion of excusable neglect in *Pioneer*. For these reasons, this Court rejects the trustee's argument that *Pioneer* does not apply to this case.

II. The *Pioneer* Standard of Excusable Neglect

 The majority in *Pioneer* specifically rejected a "narrow view of 'excusable neglect' under Rule 9006(b)(1), requiring a showing that the delay was caused by circumstances beyond the movant's control," a standard adopted by the Fourth Circuit. *Pioneer*, at —— n. 3, 113 S.Ct. at 1494 n. 3 (citing *In re Davis*, 936 F.2d 771, 774 (4th Cir.1991)). For the reasons explained above, this Court concludes that the Supreme Court would also reject a "narrow" view of "excusable neglect" under Rule 8002(c). The *Pioneer* opinion requires this Court to make a broad equitable inquiry to balance the interests of the parties with the public policy involved. *Id.* at ——, 113 S.Ct. at 1495. Regarding a time enlargement for filing proofs of claim in Chapter 11, the court looked at the purpose of a reorganization "to preserve rather than to forfeit rights." *Id.* at ——, 113 S.Ct. at 1495 (citing Advisory Committee Note to predecessor Rule 10–401(b)). The Court determined that public policy of Chapter 11 reorganization favored late filing to avoid forfeiture.

The Supreme Court held that finding "excusable neglect" requires a two-step inquiry. First, the court must determine whether the failure to file a timely claim resulted from "neglect." The *Pioneer* Court rejected a rigid "extraordinary circumstances beyond the movant's control" analysis and found that congressional intent contemplated various circumstances that could result in "neglect." *Id.* at ——, 113 S.Ct. at 1498. "Neglect" is not limited to situations beyond the control of the movant, but rather, it is "a somewhat elastic concept" which does not usually include "inadvertence, ignorance of the rules, or

mistakes construing the rules," but would include an inadvertent failure to file a proof of claim prior to the bar date, inattention, or carelessness. *Id.* at ——, 113 S.Ct. at 1496. The Court also found that a party is fully responsible for any neglect of its attorney. *Id.* at ——, 113 S.Ct. at 1499.

■ Second, this Court must evaluate the movant's "neglect" and determine whether it is "excusable." Whether neglect "is excusable" is an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Id.* at ——, 113 S.Ct. at 1498. Factors to weigh include:

1. Danger of prejudice to the non-movant;

2. Length of the delay;

3. Impact on judicial proceedings;

4. Reason for the delay, including whether it was within the reasonable control of the movant; and

5. Whether the movant acted in good faith.

*Id.* The Court stated that the purpose of requiring that "neglect" be "excusable" is to "deter ... parties from freely ignoring court-ordered deadlines in hopes of winning a permissive reprieve...." *Id.* In consideration of the policy against forfeiture in a Chapter 11, the *Pioneer* Court did find "neglect" and granted such a reprieve based on a weighing of the factors in that case. The attorney in *Pioneer* inadvertently failed to file a proof of claim prior to a bar date of which the majority felt he was unaware. However, the Supreme Court found that the movant acted in good faith, there was no prejudice to the non-movant, and there was no disruption to efficient administration of justice. The Court gave little weight to "upheaval in his law practice" experienced by movant's counsel and attached special significance to the fact that the notice of the bar date was outside the ordinary course in bankruptcy cases. The Court found that the peculiar and inconspicuous placement of the bar date in a notice of a creditor's meeting, without any indication of its significance, created a dramatic ambiguity in the notification. *Id.* at —— – ——, 113 S.Ct. at 1499–1500.

■ In applying the *Pioneer* policy balancing standard to Marx's late notice of appeal, Marx should be held fully responsible for the acts of his counsel. This Court notes that the policy on bankruptcy appeals is one of allowing appellate review as of right. In view of the ease of filing either a notice of appeal or motion for an extension of time to file such appeal, Congress allows the right of appeal only to those appellants who meet the strict time deadlines of Rule 8002. Once the ten day deadline has passed, the rule allows a late filing only upon a showing of excusable neglect. Since the failure to file a notice of appeal in a timely fashion is a jurisdictional defect barring appellate review, this policy of free right to appeal must be balanced against the public interest in "seeing an end come to litigation." *Aponte v. Aungst (In re Aponte)*, 91 B.R. 9, 10 (Bankr.E.D.Pa.1988) (citing *In re Universal Minerals, Inc.*, 755 F.2d 309, 310 (3rd Cir.1985) and *In re W & L Asso.*, 74 B.R. 681, 683 (Bankr.E.D.Pa. 1987)). In view of the policy behind Rule 8002, this Court must equitably weigh the totality of the circumstances against the competing policies behind Rule 8002, and employ the two-step process found in *Pioneer*.

First, the Court must ask if the delay was the result of "neglect," and if so, then determine whether the neglect was "excusable." Was the failure of Marx to timely file the result of neglect? It appears to this Court that Marx's counsel was fully aware of the 10–day time limit for noticing an appeal. Marx's counsel set the meeting with his client to consider noticing an appeal for 3 p.m. on Monday, May 3, 1993, the afternoon of the last day of the appeal period. Some time prior to that meeting, Marx's counsel determined that he had a schedule conflict. A trial mistakenly set on the attorney's calendar for 9 a.m. that day was actually set to heard at 1 p.m. That trial lasted until 4 p.m., and Marx's counsel rescheduled the meeting to discuss the appeal until the next day, one day after the

time for noticing an appeal as of right expired.

Marx presented no evidence that he unsuccessfully attempted to reschedule the meeting for a time prior to expiration of the time limit, or to confer with his attorney by telephone upon discovering the calendar conflict. Marx gives the Court no explanation either in argument or in brief why he could not have filed a motion to extend the time to file a notice of appeal for 20 days, which Rule 8002(c) allows *without* a showing of excusable neglect if such request is made before the expiration or the initial 10 day appeal deadline. *See* Fed.R.Bankr.Pro. 8002(c). It appears to this Court that, upon determining that a scheduling conflict existed, any attorney in the office of Marx's counsel could easily have filed such a request to extend time, it not being necessary that counsel consult with Marx before requesting an extension. It, therefore, appears from the record that defendant's late filing was due to either ignorance of the rules, a mistake in construing the rules, or a conscious disregard of the rules. Such reasons for missing an appeals deadline would not be "neglect" even under the liberal *Pioneer* standard. *See* —— U.S. at ——, 113 S.Ct. at 1496 (discussing "excusable" neglect in Fed. R.Civ.Pro. 6(b)). *Accord Consolidated Freightways Corp. of Delaware v. Larson,* 827 F.2d 916 (3rd Cir.1987) *cited in Pioneer,* at —— n. 3, 113 S.Ct. at 1494 n. 3 (as one of the circuit cases adopting the *Pioneer* more flexible approach in its interpretation of Rule 4(a)(5) of the Federal Rules of Appellate Procedure); *Campbell v. Bowlin,* 724 F.2d 484 (5th Cir.1984) (failure to read rules of procedure not excusable). It appears to this Court that Marx motion to file a late appeal should be denied on the grounds that Marx has not proven neglect to be the cause of the delay.

Even if Marx failure to timely file was "neglect," rather than ignorance, mistake, or a conscious disregard of the rules, the Court must still determine if the neglect was "excusable." Marx offers as reasons for his one day late filing that his counsel had a busy schedule during the normal appeal period, and that a mistake in counsel's calendar delayed their meeting. The *Pioneer* decision makes clear that Supreme Court ascribes little significance to attorney calendar or workload problems in determining whether the "neglect" was "excusable." *Pioneer,* at ——, 113 S.Ct. at 1499. In the case of *In re Aponte,* the court held that a sole practitioner's involvement in state court litigation did not make his neglect to file a notice of appeal rise to the level of "excusable" necessary to justify extending the appeal period. 91 B.R. at 11 (interpreting Rule 8002). *See also In re Harlow Fay, Inc.,* 951 F.2d 175, 176 (8th Cir.1991), *cert. granted, vacated, and remanded for reconsid.* —— U.S. ——, 113 S.Ct. 1809, 123 L.Ed.2d 441 (1993) *and aff'd on reh'g,* 993 F.2d 1351, 3 Bankr. L.Rep. (CCH) ¶ 75,256 (8th Cir.1993); *Hanson v. First Bank,* 828 F.2d 1310, 1314–15 (8th Cir.1987) (attorney's busy practice not excusable neglect under Fed.R.Bankr.Pro. 9006(b)(1)); *Airline Pilots v. Executive Airlines, Inc.,* 569 F.2d 1174 (1st Cir.1978) (mistake in counsel's calendar not excusable).

Unlike the circumstances in *Pioneer,* there were no ambiguous or misleading notices of the bar date of which the attorney was unaware which caused the failure to file in Marx's case. It appears to this court that Marx was not ignorant of the rules nor made a mistake in construing the rules. Defendant's counsel knew well that Rule 8002 establishes a ten-day time limit for filing notices of appeal, having scheduled a meeting with Marx on the last day of the appeal period. For the foregoing reasons, this Court finds that a conscious disregard of the rules caused the late filing. This Court also finds that this reason for the delay was within the reasonable control of the movant, which calls into question the good faith of the movant in filing the late notice of appeal. The cause of delay being within the reasonable control of the movant and the movant's questionable good faith in filing a late appeal outweigh the factors of minimal prejudice to the trustee or impact on judicial proceedings. It appears to this Court that Marx has not proven that his delay was "excusa-

ble" neglect, even if it was "neglect." It appears to this Court that Marx's motion to allow a late filing of a notice of appeal should be denied on the grounds that the reason for the delay was not excusable.

An order conforming to this memorandum decision will be entered contemporaneously herewith.