### In re William TAYLOR, Geraldine Biedzinski a/k/a Geraldine Taylor, Debtors.

### Bankruptcy No. 85–01559DAS.

United States Bankruptcy Court, E.D. Pennsylvania, Pittsburgh Division.

Feb. 12, 1998.

---

Roger V. Ashodian, Delaware County Legal Assistance Ass'n, Inc., Chester, PA, for Debtors.

Michael Bickford, Fuller, Tubb, Pomeroy, Kirschner, Bickford & Stokes, Oklahoma City, OK, for American Property Locators, Inc.

Ron B. Leppke, American Property Locators, Inc., Edmond, OK, for Movant.

Edward Sparkman, Philadelphia, PA, Chapter 13 Trustee.

Michael R. Stiles, U.S. Atty., Philadelphia, PA.

Virginia R. Powel, Asst. U.S. Atty., Philadelphia, PA.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## MEMORANDUM

DAVID A. SCHOLL, Chief Judge.

On January 14, 1998, within two weeks after the completion of the parties' briefing, this court rendered an Opinion and Order, presently reported at 1998 WL 15293 ("*Taylor I*"). In *Taylor I*, we reduced the finder's fee requested by American Property Locators, Inc. ("the Finder") from WILLIAM TAYLOR ("the Debtor") from fifty (50%) percent of the unclaimed funds payable to the Debtor in the amount of $2,873.99 ("the Funds") to ten (10%) percent of the Funds, or $287.40. *Taylor I* was docketed by the Clerk's office of this court on Thursday, January 15, 1998, and presumably mailed by the Clerk's office to all interested parties shortly thereafter. Separate copies mailed to all interested parties from our chambers on January 14, 1998.

On Wednesday, January 28, 1998, we received a motion ("the Motion") from the Finder by telefax in our chambers requesting an extension of time to file an appeal, pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 8002(c), which provides as follows:

**(c) Extension of Time for Appeal.** The bankruptcy judge may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect if the judgment or order appealed from does not authorize the sale of any property or the obtaining of credit or the incurring of debt under § 364 of the Code, or is not a judgment or order approving a disclosure statement, confirming a plan, dismissing a case, or converting the case to a case under another chapter of the Code.

In the Motion, the Finder alleged that its counsel did not receive *Taylor I* until Monday, January 26, 1998. The delay in receipt was attributed to counsel's relocation from the office address on our original *Taylor I* orders to a new office, which was identified (but not specifically called to our attention as a new address) on its counsel's post-trial brief. Although January 26, 1998, was the last day to timely file an appeal, counsel advised that he did not review *Taylor I* nor discuss it with his client until January 28, 1998, at which time, as noted above, the Motion was telefaxed to our chambers.

Attached to a subsequent Affidavit of counsel in support of the Motion was a copy of an envelope addressed to the Finder itself, postmarked January 20, 1998, showing that the mailing to the Finder was forwarded to a previously undisclosed new address of the Finder. We note that the matter decided in *Taylor I* was an Application to recover unclaimed funds filed by the Finder *pro se*. Counsel never entered a formal appearance

for the Finder. At a hearing on the Motion on February 5, 1998, the Finder's principal admitted that he had never informed this court of the change of the Finder's address, which occurred on November 26, 1997. The Finder's principal also alleged that he was away from his office from January 25, 1998, to February 2, 1998, and received *Taylor I* on his return. He further stated that he discussed the issue of an appeal with his counsel by telephone on January 28, 1998, since this date fell while he was away.

The issue presented is whether these facts constitute "a showing of excusable neglect" which justify granting the Motion, pursuant to F.R.B.P. 8002(c). This court has rendered one previous published Opinion interpreting F.R.B.P. 8002(c), *In re W & L Associates, Inc.*, 74 B.R. 681 (Bankr.E.D.Pa.1987) ("*W & L I*"), *rev'd*, C.A. No. 87–4457 (E.D.Pa. February 23, 1988) ("*W & L II*"). Although *W & L I* collected and discussed most of the applicable caselaw, *W & L II* cited no cases and provided no reasoning to support its result. We are therefore inclined to apply our general reasoning in *W & L I* despite its reversal on the particular facts of that case.

In *W & L I*, 74 B.R. at 683, we stated that

[o]ur starting point is from the pronouncements of our local Court of Appeals that the Rule 8002 time-limits are "strictly construed and …jurisdictional in effect." *Whitemere Development Corp. v. Township of Cherry Hill*, 786 F.2d 185, 187 (3d Cir.1986). *See also, e.g., In re Souza*, 795 F.2d 855, 857 (9th Cir.1986); *In re Universal Minerals, Inc.*, 755 F.2d 309, 311–12 (3d Cir.1985); and *Twins Roller Corp. v. Roxy Roller Rink Joint Venture*, 70 B.R. 308, 310 (S.D.N.Y.1987).

We further noted that, although the concept of "excusable neglect" has generally been "'narrowly defined,'" *id.*, quoting *In re Stern*, 70 B.R. 472, 475 (Bankr.E.D.Pa.1987) (FOX, J.),

strictness in the standard of interpretation of "excusable neglect" is considerably heightened in the context of Rule 8002(c) because "the extension of an appeal period involves jurisdictional issues and affects the successful party's and the public's interest in seeing an end come to litigation;

..." *In re Washington County Broadcasting, Inc.,* 39 B.R. 77, 79 (Bankr.D.Me. 1984).

*Id.* We string-cited a sizable number of cases denying F.R.B.P. 8002(c) motions, many of which presented very compelling factual scenarios, *id.* at 684, noting that we had "located *no* case in which any court has found the requisite 'showing of excusable neglect' to have been established for purposes of 8002(c)."

As the Finder's counsel indicated at the hearing of February 5, 1998, and in his post-hearing submission on this issue, one important decision which is possibly pertinent to interpretation of F.R.B.P. 8002(c) has been rendered since our decision in *W & L I, Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). As we indicated in *In re Sacred Heart Hospital of Norristown,* 186 B.R. 891, 894–95 (Bankr.E.D.Pa. 1995), *aff'd,* C.A. No. 95–6924 (E.D.Pa. February 13, 1997), *Pioneer* required a rethinking of the strict tests for "excusable neglect" promulgated in this Circuit's prior decisional law regarding allowances of extensions to claims bar dates. *But see In re Pennsylvania Truck Lines, Inc.,* 189 B.R. 331 (Bankr. E.D.Pa.1995) (extension to claims bar date denied under *Pioneer* standards).

As we stated in *Sacred Heart, supra,* 186 B.R. at 895,

[t]he Court, in *Pioneer,* articulated the appropriate F.R.B.P. 9006(b)(1) "excusable neglect" standard for extension of claims bar dates thusly, [507] U.S. at [396], 507 U.S. at 394–95, 113 S.Ct. at 1498:

"the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith . . . ." (footnotes omitted).

In that decision we focused on the lack of prejudice to the Debtor's interests in allowing the late claim, since the Debtor was a closed hospital whose confirmed Chapter 11 plan contemplated liquidation. *Id.* at 896–97. In such circumstances, we pointed out that allowing a late claim was "ultimately of little consequence to the debtor" because it "merely result[ed] in a slightly different distribution of a liquidating debtor's assets." *Id.* at 897. *Compare Pennsylvania Truck Lines, supra,* 189 B.R. at 337 (result differed largely because the debtor remained in business and would in fact be adversely affected by allowing the late claim in issue).

Although *Pioneer* could easily be said to address the standards for determining "excusable neglect" in any context, it only addressed that concept in the context of filing late claims, pursuant to F.R.B.P. 9006(b)(1). The Third Circuit Court of Appeals, in *Shareholders v. Sound Radio, Inc.,* 109 F.3d 873, 879 (3d Cir.1997), suggests, in dicta, that the *Pioneer* standards apply in interpreting F.R.B.P. 8002(c). *But see In re Mowers,* 160 B.R. 720, 724–25 (Bankr.N.D.N.Y.1993) (stricter standard than that of *Pioneer* prevails in interpretation of F.R.B.P. 8002(c)).

The following analysis appears in 10 COLLIER ON BANKRUPTCY, ¶ 8002.10[2], at 8002–20 (15th rev. ed.1997):

There is no good reason not to apply the *Pioneer* rationale to the "excusable neglect" requirement of Rule 8002(c). However, given the policy favoring finality of bankruptcy orders, acceleration of appeals, and the like, which underlies the time periods and requirements of Rule 8002, it would seem that the equitable standard adopted by *Pioneer* should, in this context, be rigorously applied so that excusable neglect is only infrequently determined (footnotes omitted).

Thus, Collier finds, as we did in *W & L I,* and irrespective of the intervening decision in *Pioneer,* that rarely will a motion for an extension to file an appeal made after the normal ten-day appeal time has run be granted.

We believe that Collier's statement of the law is accurate. It is in this light that we will analyze the particular excuses for the

late filing of the instant Motion offered by the Finder.

It is important to note that the Finder's counsel admits that, despite his change of address, he received actual notice of *Taylor I* on January 26, 1998, the last date for filing a timely appeal. *Compare W & L, supra,* 74 B.R. at 682 (counsel for the appellant claimed that the order sought to be appealed did not come into his possession until one day after the appeal deadline had run, on which date the notice of appeal was filed). Even if no decision had been made regarding prosecution of an appeal as of January 26, 1998, it appears that a request to extend the time for an appeal could have been prepared on that day and telefaxed to the court, like the Motion, within the ten-day period. Had this been done, no showing of "excusable neglect" on the part of the Finder would have been necessary to obtain an extension to file an appeal under F.R.B.P. 8002(c).

■ However, without some measure of "neglect" on the part of the Finder, there could not be "excusable neglect." Thus, our finding of "neglect" on the part of the Finder is not decisive. It is a question of the degree of the "neglect," *i.e.,* whether it rises to the level of being *in*excusable. In this regard, we observe that the conduct of the Finder's counsel is fully attributable to the Finder under *Pioneer, supra,* 507 U.S. at 396–97, 113 S.Ct. at 1499.

The Finder argues that his conduct "excusable" by positing that it was due to the happenstance of the relocation of both him and his counsel, which caused them both to fail to receive their respective copies of *Taylor I* earlier in the appeal period. · It appears true that these mutual changes of addresses did hamper the receipt of *Taylor I* by both the Finder and his counsel to some degree. Counsel further attempts to place a portion of the blame for this occurrence on this court, pointing out that his brief, filed on December 15, 1997, bore his new address. However, although counsel contended that he relocated on December 1, 1997, prior to the hearing of December 2, 1997, on the Finder's underlying Application for recovery of the Funds, and our dispatch of the briefing order, the fact of this relocation was never drawn to our attention until this fact was referenced in the Motion on January 28, 1998. Moreover, since the underlying Application was filed *pro se* by the Finder and its counsel never formally entered his appearance, any dispatches to the Finder's counsel were gratuitous. Until it filed an Affidavit of February 3, 1998, in support of the Motion, again after the hearing of December 2, 1997, and the dispatch of the briefing order to the Finder itself at its "old" address, the Finder never disclosed to us that *it* had changed *its* address as well.

Many F.R.B.P. 8002(c) motions are based on allegations that appellants and/or their counsel do not receive copies of court orders which they wished to appeal in timely fashion, or at all. However, the pertinent caselaw, in line with *W & L I* despite the intercession of *Pioneer,* almost uniformly rejects such arguments with the following reasoning:

Parties have an affirmative duty to "monitor the dockets to inform themselves of the entry of orders they may wish to appeal." *In re Sweet Transfer & Storage, Inc.,* 896 F.2d 1189, 1193 (9th Cir.1990). Therefore, the failure of a court clerk to give notice of entry of an order is not a ground, by itself, to warrant finding an otherwise untimely appeal to be timely. *See* Bankr.R. 9022 ("[l]ack of notice of the entry does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 8002"); *Zurich Ins. Co. v. Wheeler,* 838 F.2d 338, 340 (9th Cir.1988).

*In re Delaney,* 29 F.3d 516, 518 (9th Cir. 1994) (appellant alleged non-receipt of order). *Accord, In re Cahn,* 188 B.R. 627, 632 (9th Cir. BAP 1995) (appellant alleged it was misled by opposing party's failure to follow local rules for mailing a copy of the order at issue); *In re Seatrain Lines, Inc.,* 184 B.R. 660, 662 (Bankr.S.D.N.Y.1995) (order submitted by opposing party and not noticed to any party); *In re Investors & Lenders, Ltd.,* 169 B.R. 546, 551 (Bankr.D.N.J.1994) (opposing party did not dispatch order until just before appeal time expired); and *In re Cruey,* 158 B.R. 66, 69–70 (Bankr.W.D.Va.1993), *aff'd,* 37 F.3d 1493 (4th Cir.1994) (appellant denied

**470**

receipt of order despite proof of court mailing).

The Finder suggests that the foregoing authorities implicitly misread F.R.B.P. 9022, in that they hold that the failure to receive notice of an order is not a factor in a F.R.B.P. 8002(c) determination. We do not so read them. Rather, we believe that they simply hold that failure to receive a copy of an order is merely not a particularly strong factor in the weight of the applicable equities because parties to litigation have an obligation to keep themselves informed of court decisions which affect them. We note that the monitoring would not have been lengthy here, as the decision was entered within two weeks after the briefing was completed.

The only case located by this court and the Finder which could arguably be said to support the Finder's position is *In re Croft*, 174 B.R. 524 (Bankr.E.D.Mo.1994). In a very brief order which does not acknowledge any of the precedent cited here nor cite to either F.R.B.P. 8002(a) or 9022, the *Croft* court holds that, since the appellant debtor's counsel did not receive a copy of an order due to a change in his mailing address, relief under F.R.B.P. 8002(c) was warranted. In addition to being rendered without apparent review of the pertinent authority, the facts of *Croft* are distinguishable from those before us, because, in that case, the appellant's counsel allegedly never received a copy of the order at issue. Here, the *Taylor I* order arrived in the new office of the Finder's counsel in sufficient time to allow the Finder's counsel to timely file the appeal or to request an extension of that time without the necessity of establishing "excusable neglect." The neglect in failing to act on the last day to do so in such circumstances appears to us to be rather clearly *in* excusable.

A review of the circumstances deemed relevant in *Pioneer* to determine "excusable neglect" generally does not aid the Finder, particularly when, as Collier suggests, the *Pioneer* equitable standard is "rigorously applied." The primary concern of prejudice to the Debtors referenced in *Sacred Heart is* present here. Allowing an appeal will delay the Husband–Debtor's receipt of $1,149.59 out of a sum of money to which he has long

been due. A reversal could permanently jeopardize his ability to recover this sum. The instant facts therefore do not present a situation like *Sacred Heart,* where allowing a dispensation to a tardy movant could not directly affect the opposing party's rights at all.

Although the delay to the Finder was not long, as is necessary to satisfy the 30–day restriction on invocation of F.R.B.P. 8002(c) in any context, it is not as short as the one-day dispensation sought in *W & L I.* The impact of an appeal will not affect any parties except those immediately interested. However, the reason for the delay, *i.e.,* delay in receipt of the order from which a belated appeal is sought to be taken, is not a particularly strong factor according to the great weight of authority. Although we do not doubt the Finder's good faith in delay, in the sense that we do not believe that the delay was calculated to unfairly deceive the Debtors, we also believe that the ability to make a timely filing was rather clearly within the reasonable control of the Finder's counsel, which must be attributed to the Finder. *Pioneer, supra,* 507 U.S. at 396–97, 113 S.Ct. at 1499.

Thus, only some of the equitable considerations referenced in *Pioneer,* and quoted at page 468 *supra,* are present here. In a "rigorous application" of those considerations, such a showing is insufficient. The Motion will therefore be denied in an accompanying order.