John and Joyce **SILIVANCH, Felice and Frances DeFrancesco, Raymond and Mary Hague, Carol and Richard Lorenzo, Plaintiffs–Appellees–Cross–Appellants,**

Dorothy Cantone, Kevin L. Jenkins, William, Kathleen, William Jr., and Kimberly Buck, Ronald and Sima Cesarski, Michael and Doris Sckipp, Fran and Rita Galante, Mary and Louis B. Montes, Jane King, Clare Dillon, and Mary Purcell, Plaintiffs–Appellees,

v.

**CELEBRITY CRUISES, INC., and Fantasia Cruising, Inc., Defendants–Cross–Appellants,**

v.

**Essef Corp., Pac–Fab, Inc., and Struc-**

tural Europe, N.V. (f/n/a SFC),*
Defendants–Appellants–
Cross–Appellees.

Docket Nos. 02–7229, 02–7279, 02–7320,
02–7595, 02–7600, 02–7603, 02–7604,
02–7606, 02–7607.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 24, 2002.

Decided: June 25, 2003.

---

* Numerous other defendants, third-party-defen-
dants, cross-defendants, cross-claimants,
counter-claimants, and counter-defendants
appear on this Court's many docket sheets for
these appeals. We follow the convention of
the district court and parties and refer only to
those parties who have been actively repre-
sented with respect to the motion to dismiss
the appeal that is the subject of this opinion.
We also disregard what appear to have been
several changes of name and structure among
defendants that are apparently related to Es-
sef Corp. and represented by its counsel.

Steven M. Hayes, Parcher, Hayes & Snyder (Robert A. Jacobs, of counsel), New York, New York, for Plaintiffs–Appellees–Cross–Appellants John and Joyce Silivanch.

John J. Hession, Dougherty, Ryan, Giuffra, Zambito & Hession, New York, New York,. for Plaintiffs–Appellees–Cross–Appellants Felice and Frances DeFrancesco, Raymond and Mary Hague, and Carol and Richard Lorenzo.

John P. James, Friedman & James, LLP, New York, New York, for Plaintiffs–Appellees Dorothy Cantone and Kevin L. Jenkins. `

Steven C. Pepperman, Bauman & Kunkis, P.C., New York, New York, for Plain-

tiffs–Appellees William, Kathleen, William Jr., and Kimberly Buck, Ronald and Sima Cesarski, and Michael and Doris Sckipp.

Anthony F. Malanga, Jr., Belleville, New Jersey, for Plaintiffs–Appellees Frank and Rita Galante.

Lawrence P. Brady, Doyle & Brady, Kearny, New Jersey, for Plaintiffs–Appellees Jane King and Clare Dillon.

W.M. Serra, Irom, Wittels, Feund, Berne, & Serra, Bronx, New York, for Plaintiffs–Appellees Mary and Louis B. Montes.

James M. Blaney, Starkey, Kelly, Blaney, & White, Toms River, New Jersey, for Plaintiff–Appellee Mary Purcell.

James M. Hazen, Hill, Betts & Nash, New York, New York, for Defendants–Cross–Appellants Celebrity Cruises, Inc. and Fantasia Cruising, Inc.

Thomas S. Kilbane, Squire, Sanders & Dempsey, Cleveland, Ohio (Robin G. Weaver, of counsel), for Defendants–Appellants–Cross–Appellees Essef Corporation, Pac–Fab, Inc., and Structural Europe, N.V.

Before: FEINBERG and SACK, Circuit Judges, and MURTHA, District Judge.**

SACK, Circuit Judge.

Plaintiffs–Appellees–Cross–Appellants (the "plaintiffs") move to dismiss appeals filed by Defendants–Appellants–Cross–Appellees Essef Corporation, Pac–Fab, Inc., and Structural Europe, N.V. (collectively "Essef") and cross-appeals filed by Defendants–Cross–Appellants Celebrity Cruises, Inc., and Fantasia Cruising, Inc. (collectively "Celebrity") from a mass tort action heard in the United States District Court for the Southern District of New York.

The plaintiffs contend that we lack jurisdiction to hear the appeals because Essef did not file a notice of appeal within thirty days after judgment was entered as required by Fed. R.App. P. 4(a)(1). Essef relies on an extension of the time to file granted by the district court (James C. Francis IV, *Magistrate Judge*) under Fed. R.App. P. 4(a)(5) after the court found that the neglect that resulted in Essef's tardiness was excusable. The plaintiffs argue that Essef's neglect was not excusable and that the district court abused its discretion in holding otherwise. For the reasons set forth below, we agree with the plaintiffs.

In addition, Essef contends that the judgments appealed from did not become final and the time to appeal did not begin to run until the district court entered its Fed.R.Civ.P. 54(b) order on the docket in *Silivanch,* the "bellwether" case, which it did not do until after we held argument with respect to these motions. Essef bases this contention on the fact that although an order under Fed.R.Civ.P. 54(b), which directed that the judgment from which appeal was being sought was final and therefore appealable, was signed by the magistrate judge on January 25, 2002, and mailed to the parties, there was not then an entry in the docket for the "bellwether" action reflecting the issuance of the order. We conclude that the Rule 54(b) order was effective when it was signed and issued, even though it was not then entered in the "bellwether" action docket.

We therefore dismiss the appeals and cross-appeals for want of appellate jurisdiction.

## BACKGROUND

The action before us arose from a 1994 outbreak of Legionnaires' Disease on

** The Honorable J. Garvan Murtha, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

board Celebrity's cruise ship Horizon. The United States Centers for Disease Control and Prevention traced the outbreak to the presence of *legionella* bacteria in filters designed, manufactured, and distributed by Essef that were operated in connection with the ship's whirlpool spa. Water from the spa passed through silica sand and gravel within the filters, cleansing it of hair, dirt, and oils. Beneath the gravel, each filter contained a hub from which "laterals" radiated like the spokes of a wheel. Filtered water returned to the spa via holes in the laterals.

The filters were designed to be cleaned by running them in reverse. Water was forced through the laterals and up through the gravel and sand, dislodging built-up waste material. Waste water from this "backwashing" process was then thrown overboard.

According to the evidence adduced at trial, the filters did not backwash properly. Instead of lifting the entire sand bed and cleansing each grain, water flowed primarily through the center of each filter and failed to clean the outer edges. As waste material built up in the filters, "biofilms" of organic material formed. These biofilms trapped the *legionella* inside the filters, protecting the bacteria from disinfectants while providing a growth medium. The bacteria proliferated. As water containing the bacteria was released back into the whirlpool, it was aerosolized and inhaled by passengers in and near the spa.

Many victims of the outbreak, their families, and their estates, including these plaintiffs, subsequently brought suit against Celebrity and Essef for their injuries and those of their relatives. Celebrity, in turn, filed cross-claims against Essef for indemnification and other damages.

By the end of 1995, at least twenty-two separate such actions had been filed. All of the related cases were assigned to United States District Judge Lawrence M. McKenna in the United States District Court for the Southern District of New York. Judge McKenna ordered the cases consolidated for discovery before Magistrate Judge Francis who, with the consent of the parties pursuant to 28 U.S.C. § 636(c), was later designated to conduct all proceedings in the matter, including the entry of final judgments. Over the next several years, discovery proceeded. During that period, some of the plaintiffs settled with Celebrity and Essef.

In May 2000, the remaining plaintiffs, Celebrity, and Essef agreed to resolve the entire matter before Magistrate Judge Francis using a "bellwether" procedure. One case—the "bellwether"—brought by John and Joyce Silivanch, would be tried to a jury on all issues. The jury would determine if Celebrity, Essef, or both were liable for the Silivanches' injuries. If the jury found such liability, it would determine each defendant's proportional liability and Celebrity's right of indemnification against Essef, if any, with regard thereto, in addition to the amount of the Silivanches' compensatory damages. It would also determine each defendant's liability for any punitive damages to all the plaintiffs as a group. The *Silivanch* jury's findings on all issues, other than proximate cause with respect to the Silivanches' injury and compensatory damages to be awarded to them, would be binding in all of the remaining cases, each of which would be tried separately on the reserved two issues. Any punitive damages awarded in the bellwether trial would be allocated by the court among the various plaintiffs.

In June 2000, the jury returned a verdict finding the defendants liable to the Silivanches. It also found that Essef had an obligation to indemnify Celebrity in full. The jury awarded $4,200,000 in punitive damages to the plaintiffs, and another

$2,800,000 to Celebrity, all to be paid by Essef.

The remaining plaintiffs then settled or tried their cases on the issues of causation and compensatory damages. Afterward, the district court apportioned the punitive damages award among those plaintiffs who had established the requisite proximate causation at trial, or against whom such causation had not been contested because of definitive medical evidence.

In November 2001, the district court severed Celebrity's remaining claims against Essef, and, pursuant to Fed. R.Civ.P. 54(b),[1] directed the clerk of the court to enter final judgment in, and close, some or all of the plaintiffs' cases. Supplemental judgments as to punitive damages were signed by the magistrate judge, issued, and docketed for each plaintiff who was awarded punitive damages.

Shortly thereafter, on December 7, 2001, however, the district court ordered the clerk to reopen the cases that had been closed because the supplemental judgments "in many of the related cases ... ha[d] not been forwarded to counsel, and certain parties ha[d] raised the issue of post-judgment interest." Order dated Dec. 7, 2001.

On January 25, 2002, after ruling on post-judgment interest, the magistrate judge signed a new Rule 54(b) order severing Celebrity's claims against Essef, and directing the entry of final judgment in favor of the plaintiff or plaintiffs in each case. The orders, highly similar although individualized for each set of parties, were mailed to counsel and entered on each docket except, inexplicably, the docket for *Silivanch.*

Also on January 25, 2002, the magistrate judge signed separate "Second Supplemental Judgments" ordering post-judgment interest for each plaintiff or group of plaintiffs that had been allocated punitive damages. Additionally, the Second Supplemental Judgments alluded to Rule 54(b) and recited the prior compensatory awards, prejudgment interest, and punitive damages awards for each plaintiff. They were docketed in each case shortly thereafter. The *Silivanch* docket contains a January 28 entry that refers to the judgment signed on January 25:

> SECOND SUPPLEMENTAL JUDGMENT # 00,1990: that there being no just reason for delay, purs. to FRCP 54(b), pltffs be awarded postjudgment interest on the principal amount of $5,892,719.80 from 9/6/00, until final payment is made, at the rate of 6.241 percent, compounded annually. (signed by Magistrate Judge James C. Francis IV); Mailed copies and notice of right to appeal. Entered on Docket: 1/28/02. (kg) [Entry date 01/28/02].

(brackets in original.) As noted on the docket, the judgments were mailed to

---

1. Rule 54(b) reads in its entirety:

   **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Fed.R.Civ.P. 54(b).

counsel along with "right to appeal" notices.

On February 5, 2002, Robert A. Jacobs, the Silivanches' lawyer, wrote to Essef's lawyer, Robin G. Weaver, raising the issue of Essef's appeal bond. Jacobs' letter mentioned that "final judgment" had been entered on January 28. Weaver responded on February 8, acknowledging receipt of Jacobs' letter. The two lawyers had conversations in which, according to Jacobs, Weaver acknowledged that judgment had been entered on January 28.

On February 19, some three weeks after the Second Supplemental Judgments had been entered, counsel for Celebrity (James M. Hazen), Essef (Weaver), and the Lorenzo, Hague, and DeFrancesco plaintiffs (Brendan Burke), conducted a pre-argument telephone conference with Second Circuit staff counsel regarding a separate appeal filed by the Lorenzos. During the conference, staff counsel sought to set a briefing schedule that would take into account the timing of Essef's expected appeals in the other cases, and asked the lawyers when they would know whether they were pursuing such other appeals. According to Hazen, he "posited" March 4, 2002, as the "control date" for the *Silivanch* appeals, but had not actually calculated the deadline himself because Celebrity intended to appeal only if Essef did. Hazen Decl. dated Apr. 15, 2002, at ¶ 6. Based on Hazen's statement, Essef lawyer Weaver noted March 4 in his calendar as the last day for filing a notice of appeal.

Fed. R.App. P. 4(a)(1)(A) requires parties to file notices of appeal "within 30 days after the judgment or order appealed from is entered." Under it, Essef's time to appeal expired on February 27, 2002, thirty days after the January 28 entries of the Second Supplemental Judgments. On March 1, thirty-*two* days after those judgments had been entered, Essef filed a notice of appeal under the *Silivanch* caption and master-file docket number listing a January 28, 2002, order as the latest judgment appealed from.

On March 29, 2002, Essef's counsel having realized that more than thirty days had passed between the entry of the Second Supplemental Judgment in *Silivanch* and the filing of the notice of appeal, Essef filed a motion in the district court requesting, *inter alia*, an extension of time to file a notice of appeal pursuant to Fed. R.App. P. 4(a)(5).[2] In its motion, Essef asserted that it had filed its notice of appeal late because its counsel had been misled by Hazen's statement that the deadline was March 4, and that counsel's mistake "persisted because Essef received no written notice from the Court or any party that judgment was in fact entered on January 28, 2002." Essef Mot. to Reopen the Time in Which to File a Notice of Appeal dated Apr. 3, 2002, at 2. Shortly thereafter, Essef raised its contention that the time for filing a notice of appeal had not yet begun to run because the second Rule 54(b) order had never been entered in the *Silivanch*

2. Fed. R.App. P. 4(a)(5) reads in pertinent part:

> **Motion for Extension of Time**
> (A) The district court may extend the time to file a notice of appeal if:
> . . . .
> (ii) . . . [a] party shows excusable neglect or good cause.
> (B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court re-

> quires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.
> (C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 10 days after the date when the order granting the motion is entered, whichever is later.

(emphasis in original).

docket despite the fact that *Silivanch* was the bellwether case.

On May 8, 2002, the district court heard oral argument on Essef's motions. At the hearing, Essef abandoned its argument that it had never received notice of the Second Supplemental Judgments. It argued instead that no appealable judgment had been entered, and pressed its claim of "excusable neglect based on ... the state of the docket, the confusion," and Hazen's statement that the deadline was March 4. Tr. of May 8, 2002, Hearing, at 29.

The district court granted Essef's motion, concluding that Essef's late filing in reliance on Hazen's statement constituted "excusable neglect" under Fed. R.App. P. 4(a)(5)(A)(ii). *In re: Horizon Cruises Litigation,* Nos. 94 Civ. 5270; 94 Civ. 6147; 95 Civ. 0374, slip op. (S.D.N.Y. May 15, 2002) (*"Horizon Cruises Litigation"*). The court rejected Essef's argument that an appealable judgment had not yet been entered, however, describing this argument as "an after-the-fact rationalization that is inconsistent with the record and with the contemporaneous understanding of all the parties." *Id.* at 6 n. 3.

Essef filed a new notice of appeal on May 22, 2002, under the *Silivanch* caption and docket number listing the other plaintiffs' cases as related and also being appealed, and filed initial notices of appeal in those other cases too. Celebrity filed cross-appeals shortly thereafter. The plaintiffs then filed these motions to dismiss the appeals and cross-appeals as untimely.

On September 25, 2002, one day after these motions were argued before us, the clerk of the district court entered the January 25 Rule 54(b) order in the *Silivanch* docket. Essef then filed a third notice of appeal virtually identical to its second.

Before us, then, are the plaintiffs' motions to dismiss the appeals and cross-appeals on the ground that the district court abused its discretion by granting the Rule 4(a)(5) motion for an extension of time. We conclude that it did, and therefore dismiss the appeals and cross-appeals.

## DISCUSSION

### I. Standard of Review

■ "A district court's order granting or denying motions under Fed. R.App. P. 4(a)(5) is reviewed for abuse of discretion." *Goode v. Winkler,* 252 F.3d 242, 245 (2d Cir.2001) (per curiam). Such an order "cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion that it reached upon a weighing of the relevant factors." *In re O.P.M. Leasing Servs., Inc.,* 769 F.2d 911, 915 (2d Cir.1985) (citation and internal quotation marks omitted).

### II. Legal Landscape

Essef bases its opposition to the motions to dismiss its appeal on two primary contentions. It asserts that no order is effective until it is docketed, and therefore its notice of appeal was timely because it was filed before the district court's Rule 54(b) order was entered in the *Silivanch* docket. It also defends the district court's finding that Essef's neglect—i.e., Essef's counsel's reliance on a statement made by opposing counsel that the deadline was March 4, 2002, instead of calculating the deadline himself—was "excusable" under Rule 4(a)(5).

Ordinarily, only the final judgment of a district court is appealable. 28 U.S.C. § 1291; *but cf. id.* § 1292 (granting appellate jurisdiction over certain provisional equitable remedies and controlling questions of law certified by district courts).

Under Rule 54(b), an order or judgment that resolves some but not all of the claims of all of the parties does "not terminate the action as to any of the claims or parties," Fed.R.Civ.P. 54(b), and is therefore not final and immediately appealable. When multiple claims are involved and one or more of them have been resolved, however, a district court may "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties" if the court finds that there is "no just reason for delay," *id.*, at which time the judgment or judgments become appealable.

■ According to the rules in effect during the district court proceedings, every judgment, whether or not pursuant to a Rule 54(b) certification, was "effective only when ... set forth [on a separate document] and when entered as provided in Rule 79(a)." Fed.R.Civ.P. 58 (as in effect until December 1, 2002);[3] *Cooper v. Town of East Hampton*, 83 F.3d 31, 34 (2d Cir.1996) ("Th[is] mechanistic requirement[ ], while seemingly trivial, [is] necessary to the goal of promoting clarity. Litigants must be able to determine when a judgment is a judgment for the purpose of appeal ...."). The "separate document" mandated by Rule 58 must be "separate from any judicial memorandum or opinion" and "must be labeled a 'judgment.'" *Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 84 (2d Cir.1993). And Fed. R.Civ.P. 79(a) requires the clerk of the court to enter every order or judgment in a case into that case's docket.

A party seeking to appeal a civil judgment must (with exceptions not applicable here) file a notice of appeal with the district court clerk, Fed. R.App. P. 3(a)(1), "within 30 days after the judgment or order appealed from is entered," *id.* 4(a)(1)(B); *see Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 55 (2d Cir.1997). The thirty-day period does not begin to run until a judgment is issued on a separate document and entered in the docket, Fed. R.App. P. 4(a)(7) (as in effect until December 1, 2002),[4] and the judgment is or becomes final, *see FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 275–76, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991) (holding that a notice of appeal filed before any appealable judgment has been entered becomes effective when an entered judgment becomes appealable).

■ Compliance with Rule 4(a) is "mandatory and jurisdictional." *Endicott Johnson Corp.*, 116 F.3d at 55 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam) (citation and internal quotation marks omitted)). If no notice of appeal is filed before the deadline provided by Rule 4(a)(1) (or a new deadline set pursuant to Rule 4(a)(5) or (6)), this Court lacks jurisdiction to hear the appeal. *See Griggs*, 459 U.S. at 61, 103 S.Ct. 400 (finding that a notice of appeal filed outside the time limits prescribed by Rule 4(a) is a "nullity," and that a timely notice of appeal is jurisdictional).

---

**3.** Rule 58 was substantially revised by amendments effective December 1, 2002. Among other things, the new Rule 58 clarifies when a separate judgment is unnecessary. Fed. R.Civ.P. 58(a)(1) (as amended, December 1, 2002). If a judgment does require a separate document, the judgment is deemed entered 150 days after it is entered in the docket, even if no separate document has been issued. *Id.* 58(b)(2).

**4.** Rule 4(a)(7) was amended in 2002 to follow the simultaneous amendments to Rule 58. *See supra* note 3. Under the amended rule, a judgment becomes final and the thirty-day period begins when it is docketed and issued in a separate document, or 150 days after the judgment is entered, even if it has not been issued in a separate document.

"The power of the federal courts to extend this time limitation is severely circumscribed." *Endicott Johnson Corp.*, 116 F.3d at 56. In most civil cases, there are only two potential methods for doing so. Fed. R.App. P. 4(a)(6) allows district courts to "reopen the time to file an appeal" if a party did not receive notice that judgment had been entered. And Fed. R.App. P. 4(a)(5) allows the district court to "extend the time to file a notice of appeal" if a party "shows excusable neglect or good cause."

Under Rule 4(a)(1), the time in which to file an appeal does not begin to run until all of the requirements of Fed.R.Civ.P. 58 have been satisfied. Fed. R.App. P. 4(a)(1)(A) ("the notice of appeal ... must be filed ... within 30 days after the judgment or order appealed from is entered"); *id.* 4(a)(7) (as in effect until December 1, 2002) (defining "entry" as compliance "with Rules 58 and 79(a)" of the Federal Rules of Civil Procedure). Prior to the 2002 amendments to the federal rules, the Rule 4(a)(1) period in which to file a notice of appeal therefore did not begin to run until a Rule 58 judgment was issued on a separate document and entered on the docket and, if any claims in the case remained unresolved, was certified as final pursuant to Rule 54(b). *See generally* Michael Zachary, *Rules 58 and 79(a) of the Federal Rules of Civil Procedure: Appellate Jurisdiction and the Separate Judgment and Docket Entry Requirements,* 40 N.Y.L. Sch. L.Rev. 409 (1996).

The interplay of these rules provides the basis for Essef's two contentions in response to this motion: (1) that the judgment in *Silivanch* did not become final or appealable until the Rule 54(b) order was entered into the docket for that case because under Rule 79(a) orders do not become effective until they are docketed, and (2) that its neglect in failing to file a notice

of appeal within thirty days of the entry of the Second Supplemental Judgment in *Silivanch* is excusable under Rule 4(a)(5).

### III. Failure to Docket the Rule 54(b) Order in *Silivanch*

Essef asserts that no order is effective until it is entered in the docket, and that the Rule 54(b) certification in *Silivanch* therefore did not become effective, the Second Supplemental Judgments did not become appealable, and the time to appeal under Rule 4(a)(1) did not start to run, until the certification was docketed in *Silivanch* on September 25, 2002.

■ It is undisputed that the judgment from which Essef sought to appeal—the Second Supplemental Judgment in *Silivanch*—was set forth in a separate document, and entered on the docket on January 28, 2002. The only other requirement to start the time for filing of the notice of appeal running was the Rule 54(b) certification, which rendered the Second Supplemental Judgment final and therefore appealable. Essef argues that Rule 54(b) certifications, like Rule 58 judgments, are not effective until they are entered in the docket and points out that the Rule 54(b) certification in *Silivanch* was not *docketed* until much later. That is of no moment. There is no requirement that such a certification be docketed in order for it to become effective for these purposes. With respect to such certifications, the rules require only that a court make certain "express determination[s]" and "direct the entry of a final judgment." Fed.R.Civ.P. 54(b). To become effective, certifications—unlike final judgments—do not require entry in the docket.

Fed.R.Civ.P. 79(a) indeed does call for the entry of all "orders, verdicts, and judgments" in the docket, but the reason for the requirement is the docket's "public record keeping function." *Bankers Trust*

*Co. v. Mallis,* 435 U.S. 381, 384 n. 4, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam) ("[u]nlike the separate-document requirement ... the keeping of a civil docket pursuant to Rule 79 fulfills a public recordkeeping function"). The rule is directed to the clerk, not to the parties or the court. *See* Fed.R.Civ.P. 79(a).

■ In *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898 (2d Cir.1997), we rejected the idea that an undocketed order was a nullity despite a local rule stating that "notation in the appropriate docket ... shall constitute the entry of the order." *Id.* at 909–10 (quoting S.D.N.Y. Civ. R. 6(a)). As we said in *Lightfoot,* the requirement that orders be entered in the docket is no more than "a ministerial rule of procedure, intended to ensure that case dockets are properly maintained as useful sources of information for the litigants and court personnel." *Id.* at 910.[5]

The *Silivanch* Rule 54(b) order was effective when it was signed and mailed to the parties, on January 25, 2002. The Rule 4(a)(1) period began on the 28th, when the Second Supplemental Judgment in that case was set forth on a separate document and entered on the docket, and the period ended thirty days later on February 27. Because Essef's notice of appeal was not filed until two days thereafter, it was untimely and we lack jurisdiction to hear Essef's appeal unless Essef satisfactorily took advantage of one of the exceptions provided by Rule 4(a).

## IV.  Excusable Neglect

The district court decided that Essef's neglect in failing to file a timely notice of appeal was excusable under Fed. R.App. P. 4(a)(5) because of Essef's counsel's reliance on Celebrity's counsel's statement during a pre-argument scheduling conference that the deadline for filing was March 4. Essef also argued that it was excusable because the lateness also resulted from confusion in the records and dockets of these cases.

We have observed:

Prior to the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), we adhered to a firm rule that the excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules....

In *Pioneer,* however, the Supreme Court established a more liberal standard for determining whether there had been 'excusable neglect.' Although *Pioneer* in-

---

**5.** Other courts have treated the significance of docket entries similarly. *See, e.g., Noli v. Commissioner,* 860 F.2d 1521, 1525 (9th Cir. 1988) (holding an oral order binding and effective despite the court's failure to enter it on the docket); *In re Saunders,* 240 B.R. 636, 644 (S.D.Fla.1999) ("[p]arties should be able to reasonably rely on a written order, signed by a Judge, that the party has actually received, even if this Order does not get docketed"); *see also United States v. F. & M. Schaefer Brewing Co.,* 356 U.S. 227, 235–36, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958) ("a formal judgment ... signed by the judge ... is prima facie the decision or judgment rather than a statement in an opinion or a docket entry.")

(quoting *United States v. Hark,* 320 U.S. 531, 534–35, 64 S.Ct. 359, 88 L.Ed. 290 (1944)); Zachary, *supra,* at 434–40, 442–50 (concluding that the docket entry requirement is not jurisdictional with respect to judgments).

In *In re American Precision Vibrator Co.,* 863 F.2d 428, 429 (5th Cir.1989), the court did note that "[o]rders do not become final until they are docketed," but as Judge Kaplan pointed out in *In re Rezulin Products Liability Litigation,* 133 F.Supp.2d 272, 298 (S.D.N.Y. 2001), *American Precision Vibrator* "is distinguishable because the dismissal order [in that case] was appealable and therefore governed by Rule 58."

terpreted "excusable neglect" in the context of Bankruptcy Rule 9006(b)(1), the Court analyzed that term as it is used in a variety of federal rules, including Rule 60(b)(1). For that reason, we have held that *Pioneer's* "more liberal" definition of excusable neglect is applicable beyond the bankruptcy context where it arose. *Canfield v. Van Atta Buick/GMC Truck Inc.*, 127 F.3d 248, 249–50 (2d Cir.1997) (per curiam), *cert. denied*, 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 117 (1998) (quoting *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir.1994) (other citations and internal quotation marks omitted)), *cert. denied*, 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 117 (1998); *see also United States v. Hooper*, 9 F.3d 257, 259 (2d Cir.1993) (applying *Pioneer* to extensions of time to file notices of appeal under Fed. R.App. P. 4(b), noting that the case "draws upon the use of ['excusable neglect'] in other federal rules," and "nothing … limits its interpretation … to the Bankruptcy Rules").[6]

■ In *Pioneer*, the Supreme Court referred to "excusable neglect" as an "elastic concept," 507 U.S. at 392, 113 S.Ct. 1489 (internal quotation marks omitted), implying a determination that is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," *id.* at 395, 113 S.Ct. 1489. Factors to be considered in evaluating excusable neglect include "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

■ In the typical case, the first two *Pioneer* factors will favor the moving party: "[D]elay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible, since the Rule requires a 4(a)(5) motion to be filed within thirty days of the last day for filing a timely notice of appeal." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.), *cert. denied*, 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 248 (2000). And rarely in the decided cases is the absence of good faith at issue. *See id.* But despite the flexibility of "excusable neglect" and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, we and other circuits have focused on the third factor: "the reason for the delay, including whether it was within the reasonable control of the movant."[7] *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489. We have noted that the equities will rarely if ever favor a party who "fail[s] to follow the clear dictates of a court rule" and held that where "the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in

---

**6.** The term "excusable neglect" appears frequently in the United States Code and Federal Rules as a basis for motions to extend time limitations. *See, e.g.*, 2 U.S.C. § 394(c)(2); 28 U.S.C. § 2107(c); Fed. R. Bkrtcy. P. 7013, 8002(c)(2) & 9033(c); Fed.R.Crim.P. 45(b)(1)(B); Fed.R.Civ.P. 6(b)(2), 13(f) & 60(b)(1).

**7.** *See also Graphic Communications Int'l Union, Local 12–N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5–6 (1st Cir.2001) ("Although the *Pioneer* standard is more forgiving than the standard in our prior case law, there still must be a satisfactory explanation for the late filing.... [T]he four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close[] case, the reason-for-delay factor will always be critical to the inquiry.") (citation, internal quotation marks and final ellipsis omitted).

the ordinary course, lose under the *Pioneer* test." *Canfield,* 127 F.3d at 250–51 (holding not clearly erroneous the district court's decision that a lawyer's failure to file motion papers within the time limit established by a local rule was not excusable neglect under Rule 60(b)); *accord United States v. Hooper,* 43 F.3d 26, 28–29 (2d Cir.1994) (per curiam) (*"Hooper II"*) (affirming denial of Rule 4(b) extension where delay resulted from legal assistant's ignorance of the rules); *Weinstock,* 16 F.3d at 503 (affirming denial of Rule 4(a)(5) extension where delay was due to a misunderstanding of the rules, even though the rule in question was "a 'trap' for the unsuspecting litigant" and had been amended for that reason prior to our decision).

A. *The Statement During the Scheduling Conference That the Deadline Was March 4*

■ Although the last day for Essef's filing of its notice of appeal was February 27, thirty days after the entry of the Second Supplemental Judgment in *Silivanch,* Essef filed its notice of appeal on March 1, 2002. The district court found that "[d]uring [the scheduling] conference [with respect to the *Lorenzo* appeal], counsel for Celebrity stated that the deadline for appealing from the Second Supplemental Judgment was March 4, 2002. In reliance on that erroneous calculation, Essef did not file its notice of appeal until March 1, which was beyond the deadline." *Horizon Cruises Litigation,* slip op. at 1 (citations to the record omitted). We have no basis on which to conclude that those findings were erroneous, let alone clearly so.

The district court concluded that Essef's late filing therefore resulted from "excusable neglect" under Rule 4(a)(5). Here we disagree. We think that the court exceeded its discretion in so concluding. In our view, a lawyer's dependence entirely on a statement made under such circumstances in determining the filing deadline for a notice of appeal is not "excusable" as· we have used that word in related contexts.

■ As already noted, we agree with the observation that, in the case of a motion for an extension of the time to file a notice of appeal, "the prejudice to the non-movant will often be negligible." *Lowry,* 211 F.3d at 463. We see no reason to doubt that that is true with respect to the prejudice to the plaintiffs in this case. We therefore agree with the starting point of the district court's analysis:

> [W]hen a party files for an extension of the time to file an appeal, "the court's sympathy will lie with the applicant: the hardship of being denied an appeal is great …, while the hardship to the prospective appellee is usually small."
> … [T]he prejudice to Essef of denying its motion [for an extension] would be significant, since it would be denied the opportunity to appeal a multimillion dollar verdict.

*Horizon Cruises Litigation,* slip op. at 5 (quoting *O.P.M. Leasing Servs., Inc.,* 769 F.2d at 916–17) (additional citation omitted).

We operate in an environment, however, in which substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law. Judges, of course, make mistakes. We, like the district court, have considerable sympathy for those who, through mistakes—counsel's inadvertence or their own—lose substantial rights in that way.[8]

---

8. Judge Learned Hand said of statutes of limitations:

> They are often engines of injustice; their justification lies in furnishing an easy and certain method of solving problems which

And there is, indeed, an institutionalized but limited flexibility at the margin with respect to rights lost because they have been slept on.[9] But the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar.

In our cases addressing when neglect is "excusable," we have therefore taken a hard line. In *Canfield*, for example, we affirmed the denial of a motion to extend the time for responding to an adversary's dispositive motion when the attorney filed late, in violation of "the clear dictates of a court rule," because of his personal involvement in other affairs. *Canfield*, 127 F.3d at 250. The mere "possibility that a court may properly find excusable neglect [where it consists of inadvertence, ignorance of the rules, or

mistakes construing the rules does not] alter[ ] the principle that failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect." *Id.* at 250.

Similarly, in *Weinstock*, we agreed that the district court did not err when it declined to grant a motion to extend the plaintiff's time to appeal, even though the untimeliness resulted from the nullification by operation of law of a previously filed notice of appeal, *Weinstock*, 16 F.3d at 502, and even though the rule under which it had been nullified had since been amended precisely because it thus "created a 'trap' for the unsuspecting litigant," *id.* at 503; *see also* Fed. R.App. P. 4 advisory committee's notes (1993 amendment) (explaining rule change).[10] We affirmed because "[t]he excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." *Weinstock*,

---

are often intrinsically insoluble, or soluble only with so much uncertainty and after so much trouble that in the long run the game is not worth the candle. Perhaps they are not justifiable at all .... But where they do exist one must be prepared for hard cases, and it is no answer that this is one.
*Helvering v. Schine Chain Theaters*, 121 F.2d 948, 950 (2d Cir.1941).

9. In addition to the shelter from the consequences of "excusable neglect" resulting in late appeals provided by Fed. R.App. P. 4(a)(5), and causing certain other procedural errors under Fed.R.Civ.P. 60(b), other obvious examples include the tolling in "extraordinary or exceptional circumstances" of the one-year period of limitations governing habeas corpus petitions under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, *see, e.g., Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir.2000) (citation and internal quotation marks omitted), and the tolling of other statutes of limitations in other civil cases, *see, e.g., Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir.2002) ("[W]e have

broadly stated ... that we will apply the equitable tolling doctrine as a matter of fairness where a plaintiff has been prevented *in some extraordinary way* from exercising his rights, [but] we [have] made it clear that we had in mind a situation where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action") (citations and internal quotation marks omitted; first emphasis added; second emphasis in original), *cert. denied*, —— U.S. ——, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003).

10. *See also Weinstock*, 16 F.3d at 503 (referring to *McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1103 (2d Cir.), *cert. denied*, 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990), in which we observed that "Judge Posner has appropriately termed Rule 4(a) [as then in effect] a 'trap for the unwary into which many appellants, especially those not represented by counsel ... have fallen, with dire consequences since there is no way they can reinstate their appeal if the second notice of appeal is untimely.' *Averhart v. Arrendondo*, 773 F.2d 919, 920 (7th Cir.1985).").

16 F.3d at 503 (quoting *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 515 (2d Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985)) (internal quotation marks omitted).

And in *Hooper II,* a criminal case nonetheless bearing a strong resemblance to the case before us, we agreed with the district court's refusal to order an extension of time to file a notice of appeal under Rule 4(b) where the failure to file a timely notice resulted from a legal assistant's confusion between the length of time after judgment in which a notice of criminal appeal must be filed and the length of time after judgment in which a civil appeal must be filed. (The appeal would have been timely had the case been civil rather than criminal.) We quoted *Weinstock*'s observation that "[a]s this Court has explained numerous times: The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.... Counsel's lack of familiarity with federal procedure is not an acceptable excuse." *Hooper II,* 43 F.3d at 29 (quoting *Weinstock,* 16 F.3d at 503 (internal quotation marks omitted in original)).

One might attempt to distinguish our decided cases from the one before us on the ground that they involved mistakes of law and this appeal is about a mistake of fact—when the thirty-day period in which to file a notice to appeal expired. *See Advanced Estimating Sys., Inc. v. Riney,* 130 F.3d 996, 999 (11th Cir.1997) (making such a distinction). But we think that in this case, at least, it is a distinction that is difficult to sustain and of little value. In *Canfield,* for example, the defaulting lawyer had been specifically reminded of the time limitation that he ultimately missed. He simply failed to abide by it. 127 F.3d

at 249. The neglect held not to be excusable therefore did not appear to result in a mistake of law. In any event, we see no reason to consider similarly neglectful conduct differently when it results in a mistake of law rather than a mistake of fact. We find no justification for treating this case differently from *Hooper II,* for example, simply because in that case a legal assistant mistakenly thought that the rule called for a thirty rather than a ten-day limitation, whereas here, counsel knew there was a thirty-day limitation, but neglected to consult a calendar to determine when it expired. 43 F.3d at 28; *see also Lowry,* 211 F.3d at 463–64 (holding that the district court abused its discretion by concluding that one-day-late filing of notice of appeal resulting from counsel's miscalculation of the date on which notice of appeal was due was "excusable neglect" for purposes of applying Rule 4(a)(5)); *cf. Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489 ("*inadvertence,* ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect") (emphasis added); *Graphic Communications Int'l Union, Local 12–N v. Quebecor Printing Providence, Inc.,* 270 F.3d 1, 8 (1st Cir. 2001) (affirming denial by district court of Rule 4(a)(5) extension because lateness "was the result of ignorance of the law *and inattention to detail*") (quoting the district court order under review, emphasis added). We find nothing exceptional about Hazen's comment or its context that should relieve Essef of responsibility for its own compliance with the rules of procedure. *Cf. Endicott Johnson Corp.,* 116 F.3d at 57 (absent "exceptional circumstances, each party is responsible for knowing the pertinent procedural rules and principles and for taking such steps as are needed to protect its own interests.").

To be sure, this Court does not appear

to have rendered a published opinion,[11] at least after *Pioneer*, in which we have *reversed* a district court's grant of an extension of time for "excusable neglect" because we concluded that it *was* an abuse of discretion, as opposed to affirming a district court's denial of a motion to extend time because it *was not* an abuse of discretion. But in light of the strong language in which we have affirmed such denials in circumstances similar to this one, we have no hesitation in concluding that reversal for abuse of discretion is warranted here. Other circuits have with some frequency reversed similar district court extensions of time for excusable neglect as abuses of discretion. *See, e.g., Lowry,* 211 F.3d at 464 (reversal (by the Eighth Circuit) of a district court's Rule 4(a)(5) extension because failure to calculate correctly the thirty-day appeal period was "garden variety attorney inattention," and "[i]f we were to apply the excusable neglect standard to require that we deem [the] neglect excusable in this case, it [would be] hard to fathom the kind of neglect that we would not deem excusable"); *Midwest Employers Cas. Co. v. Williams,* 161 F.3d 877, 879–80 (5th Cir.1998) (reversing Rule 4(a)(5) extension granted by district court when attorney mistakenly thought Fed.R.Civ.P. 6(e) gave him three extra days in which to file a motion for a new trial, which would have tolled the thirty-day Rule 4(a) period); *Advanced Estimating Sys.,* 130 F.3d at 998 (holding (by the Eleventh Circuit) that "as a matter of law, ... an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline"); *Prizevoits v. Indiana Bell Tel. Co.,* 76 F.3d

132, 133–34 (7th Cir.1996) (dismissing appeal where district court granted Rule 4(a)(5) extension after attorney, disregarding Fed.R.Civ.P. 6(b), filed a late motion for a new trial, which failed to toll the Rule 4(a) period, because "[a]n unaccountable lapse is not excusable neglect.... [T]he rule is crystal clear, the error egregious, the excuses so thin as to leave the lapse not only unexcused but inexplicable. If there was 'excusable' neglect here, we have difficulty imagining a case of inexcusable neglect."); *Kyle v. Campbell Soup Co.,* 28 F.3d 928, 931–32 (9th Cir.) (holding that district court abused its discretion by granting Rule 4(a)(5) extension, when attorney had mistakenly believed that under Fed.R.Civ.P. 6(e) the Rule 4(a) period began three days after the judgment was mailed, because the rules were "nonambiguous"), *cert. denied,* 513 U.S. 867, 115 S.Ct. 185, 130 L.Ed.2d 119 (1994). We thus think ourselves compelled, on these facts, to conclude that the district court abused its discretion when it decided that Essef's counsel's determination of the wrong date by which Essef had to file a notice of appeal in sole reliance on a remark by counsel for another party during a scheduling conference for another appeal constituted excusable neglect.

## B. Confusion in the Record

Essef argues that its neglect may also be excused because it resulted from confusion in the record and dockets regarding when and whether the Second Supplemental Judgment was appealable, an issue not explicitly decided by the district court. We agree with Essef that the proceedings in this case may be characterized as at times confused: The district court's first

---

11. Under our court rules, summary order disposition is neither precedential nor may it be cited.2d Cir. R. § 0.23 ("Since these statements do not constitute formal opinions of the court and are unreported or not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court.").

supplemental judgments, issued in November 2001, were not mailed to some parties. All of the cases were then reopened by the court's December 7 order. And the second Rule 54(b) order was not properly entered into the bellwether docket.

But none of this was the reason for Essef's failure to file its notice of appeal on time. Essef did not assert that it was misled or confused about whether the Second Supplemental Judgment was final and the time to appeal had therefore begun to run until—during the pendency of its Rule 4(a)(5) motion for an extension—Essef's counsel, Weaver, checked the *Silivanch* docket and learned that the January 25 Rule 54(b) order had not been entered there. Essef's original Rule 4(a)(5) motion justified the tardy filing by arguing only that Essef had "never received written notice of the entry of judgment from which [it] appealed," Essef Mot. to Reopen the Time in Which to File a Notice of Appeal dated Apr. 3, 2002, at 1—an assertion that Essef later abandoned—and that it was misled by Celebrity's lawyer, Hazen, during the telephone conference.

And Essef did indeed receive clear notice that final judgment had been entered.[12] It could not have been confused about that. Weaver spoke to the Silivanches' counsel about the appeal, and noted March 4 on his calendar as the Rule 4(a) deadline, after the February 22 telephone conference. Neither discussing the impending appeal with an adversary nor calendaring the Rule 4(a) deadline seems to us to be consistent with doubt as to whether the time to appeal had begun to run.

While there may be circumstances in which the absence of a docket entry and similar factors create legitimate and excusable confusion, they are not present here. The district court implicitly so held when it identified a single cause for the late filing: the date mentioned by counsel during the scheduling conference, not Essef's confusion by the dockets and record. That finding was not clearly erroneous.

## V. Essef's Other Ground for Appeal

Essef contends that because *Silivanch* was the "bellwether" case, a timely notice of appeal in that case confers jurisdiction to hear appeals in all of the related cases. But, as we have discussed, the notice of appeal filed in *Silivanch* was not timely. We therefore do not reach the issue of whether Essef's other appeals would have been timely if the *Silivanch* appeal was.

## VI. Celebrity's Cross–Appeals

Celebrity asserts that its notices of cross-appeal were timely under Fed. R.App. P. 4(a)(3), which states that when "one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed." Celebrity acknowledges that "if Essef's appeal fails" because it was not timely filed, "Celebrity's cross appeal fails with it." Ltr. from Hazen to Francis, dated Apr. 17, 2002, at 1. Because Essef's notices of appeal were not timely, Celebrity's notices of cross-appeal were not timely either. We therefore lack jurisdiction over Celebrity's cross-appeals.

---

**12.** Essef's failure to dispute that it received the Rule 54(b) order, the Rule 58 Second Supplemental Judgment (citing Rule 54(b) and stamped "THIS DOCUMENT WAS ENTERED ON THE DOCKET ON 1/28/02,") and Jacobs' letter (whose first line read "final judgment was entered ... on January 28, 2002"), support our conclusion that Essef did, in fact, have actual notice that the Second Supplemental Judgments were final as of January 28, 2002.

## CONCLUSION

For the foregoing reasons, the plaintiffs' motion is granted and the parties' appeals and the cross-appeals are dismissed.