**In re HONGJUN SUN and Chuanyu Xie., Debtors.**

**Xuchang Rihetai Human Hair Goods Co., Ltd., Plaintiff,**

v.

**Hongjun Sun and Chuanyu Xie, Defendants.**

**Bankruptcy No. 101–25054–353.**

**Adversary No. 102–1034–353.**

United States Bankruptcy Court, E.D. New York.

March 24, 2005.

Reppert Kelly, LLC, New York City, By Bing Li, Esq., for Plaintiff.

Levi Lubarsky & Feigenbaum, LLP, New York City, By Steven B. Feigenbaum, Esq., for Defendants–Debtors.

*MEMORANDUM OPINION AND ORDER DENYING MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL AND MOTIONS TO REOPEN CASE AND ADVERSARY PROCEEDING*

JEROME FELLER, Bankruptcy Judge.

The Debtors have been denied a discharge pursuant to 11 U.S.C. 727(a)(3).

The matter before the Court is a motion seeking authorization under Fed. R. Bankr.P. 8002(c) to file a late appeal of the discharge denial ("Extension Motion"). In that connection, the Debtors request a reopening of the above-captioned Chapter 7 case and the adversary proceeding brought thereunder objecting to discharge. The Extension Motion is predicated on the *pro se* status of the Debtors.

For the reasons hereinafter set forth, we conclude that the Debtors have failed to show the requisite excusable neglect to obtain an extension of time for an appeal. Accordingly, we deny the Extension Motion. Because, the Extension Motion lacks merit, we see no purpose to be served by reopening closed subjects. We thus also deny the Debtors' motion to reopen the Chapter 7 case and the underlying adversary proceeding.

I.

The Debtors, represented by counsel, filed their Chapter 7 case on December 6, 2001. The bankruptcy filing was precipitated by a judgment obtained by Plaintiff in lengthy and bitterly contested district court litigation. Indeed, the liability to Plaintiff under that judgment was the only debt scheduled by the Debtors in their bankruptcy petition. On January 22, 2002, Plaintiff commenced the above-captioned adversary proceeding alleging various causes of action objecting to discharge and dischargeability. Until the early fall of 2002, the Debtors were represented by counsel. At that time, the Debtors advised counsel of their desire to appear *pro se*. On the request of the Debtors' counsel an "Order Withdrawing Attorney of Record for the Debtor" was entered on September 30, 2002.

From in or around October 1, 2002, the Debtors appeared *pro se* and as such vig-

orously defended their interests in the adversary proceeding. They responded, *pro se*, to discovery requests. They fended for themselves in a number of discovery disputes and filed voluminous papers in opposition to motions to compel brought by Plaintiff. In August 2003, Plaintiff moved for summary judgment pursuant to Fed. R. Bankr.P. 7056. The Debtors, *pro se*, opposed the motion for summary judgment and filed voluminous papers in opposition.

By an order entered on January 5, 2005, we granted Plaintiff's motion for summary judgment, denying the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(3) for failure to maintain adequate books and records ("Order Denying Discharge"). We declined, however, to rule on Plaintiff's summary judgment requests under 11 U.S.C. §§ 727(a)(2), 727(a)(4) and 523(a)(2).

On the date of entry of the Order Denying Discharge, January 5, 2005, notice of denial of discharge was transmitted to the Debtors by the Clerk of the Court as required by Fed. R. Bankr.P. 9022(a). In addition, on January 5, 2005, a copy of the Order Denying Discharge was sent to the Debtors by Chambers of the undersigned. Under Fed. R. Bankr.P. 8002(a), the Debtors had until January 18, 2005, to file a notice of appeal.[1] A notice of appeal was not filed by the deadline and the Clerk of the Court closed the bankruptcy case and underlying adversary proceeding. On January 28, 2005, the Debtors retained the law firm of Levi Lubarsky and Feigenbaum LLP (the "Levi Firm") to represent them. On February 1, 2005, the Levi Firm filed the pending Extension Motion on behalf of the Debtors pursuant to Fed. R. Bankr.P. 8002(c).

A hearing on the Extension Motion was held on March 1, 2005, at the conclusion of which the Court was requested to defer ruling on the Extension Motion for one week so the parties could discuss settling their disputes. On March 11, 2005, the Court was advised that the parties were unable to reach a settlement agreement.

## II.

A party seeking to appeal an order of a bankruptcy court must file a notice of appeal, or a request for an extension of time in which to file a notice of appeal, within ten days after entry of the order. Fed. R. Bankr.P. 8002(a) and (c)(2). However, if the appealing party does not request an extension of time until after expiration of the ten day period, the bankruptcy court may nonetheless grant an extension upon "a showing of excusable neglect," if the request for such extension is filed within twenty days after expiration of the initial ten day period. *Id.* In the case at bar, the Debtors filed their Extension Motion on the fourteenth day of the twenty-day period after expiration of the time for filing a notice of appeal, clearly meeting the outermost time limit permitted by Fed. R. Bankr.P. 8002(c)(2). The only issue is whether there has been a showing of excusable neglect. The burden of demonstrating excusable neglect rests on the party seeking the extension. *Hassett v. Far W. Fed. Sav. and Loan Ass'n (In re O.P.M. Leasing Servs., Inc.)*, 769 F.2d 911, 917 (2d Cir.1985); *In re Hilliard*, 36 B.R. 80, 82 (S.D.N.Y.1984).

Excusable neglect is not defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. Fortunately, in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S.

---

1. The tenth day from entry of the Order Denying Discharge was a Saturday that was followed by a legal holiday on Monday, resulting in the January 18, 2005 deadline. *See* Fed. R. Bankr.P. 9006(a).

380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court, bestowed guidance to the meaning of the term. The Supreme Court explained that "excusable neglect" involves an equitable determination that should incorporate all relevant factors, including i) danger of prejudice to the non-movant; ii) length of delay and its potential impact on judicial proceedings; iii) the reason for the delay, including whether it was within the reasonable control of the movant; and iv) whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395, 113 S.Ct. 1489.

Although the Supreme Court in *Pioneer* was dealing with the interface between "excusable neglect" and the allowance of a late proof of claim in a Chapter 11 case, the nature and extent of the Supreme Court's exposition of the term makes it clear that the meaning attributed to "excusable neglect" has broad application to bankruptcy practice and procedure. Indeed, *Pioneer* has applicability beyond even the bankruptcy context from which it arose. *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994); *United States v. Hooper*, 9 F.3d 257, 259 (2d Cir.1993). The far reaching relevance of *Pioneer* to varied situations necessitates an inherent elasticity to the concept of "excusable neglect" which renders the term subject to differing considerations and emphases depending upon the procedural framework in which it is to be applied.

■ The right to appeal is tempered by a strong public interest in bringing litigation to closure. The filing of a timely notice of appeal and exacting enforcement of deadlines are essential to the realization of that public interest. The requirement of a timely notice of appeal is, therefore "mandatory and jurisdictional." *Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 55 (2d Cir.1997) (*quoting*

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225, (1982) (per curiam)) (citation and internal quotation marks omitted). "The failure to file a notice of appeal in [a] timely fashion is a jurisdictional defect barring appellate review." *Aponte v. Aungst (In re Aponte)*, 91 B.R. 9, 10 (Bankr.E.D.Pa.1988). In the world of bankruptcy, Fed. R. Bankr.P. 8002 implements the overarching public policy of bringing litigation to an end by imposing strict time constraints on parties that wish to appeal and limiting the time during which a bankruptcy court can permit an appeal after the original ten day period has expired. Thus, when applying the teachings of *Pioneer* to a question of enlarging the time to appeal under Fed. R. Bankr.P. 8002(c), this Court must weigh the public policy involved as well as the legitimate interests of the parties.

In the typical case involving a motion to file a late appeal on the ground of excusable neglect, the four factors identified in *Pioneer* do not carry equal weight; the main focus of inquiry is the third factor, "the reason for the delay, including whether it was within the reasonable control of the movant." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (citation and internal quotation marks omitted); *see Weinstock*, 16 F.3d at 503 (affirming denial of motion to file late appeal for excusable neglect because of unacceptable reason for delay, even though other *Pioneer* factors worked in favor of movant); *Belcher v. Columbia University (In re Belcher)*, 293 B.R. 265 (Bankr. N.D.Ga.2001) (denial of request to file late appeal without any discussion of *Pioneer* factors other than reason for delay); *Joslin v. Wechsler (In re Wechsler)*, 246 B.R. 490, 494 (S.D.N.Y.2000) (denial of request to file late appeal because the reason for delay weighed against movant, even

though the three other *Pioneer* factors tended to favor movant); *HML II, Inc. v. Ginley (In re HML II, Inc.)*, 234 B.R. 67, 72 (6th Cir. BAP 1999) (affirming denial of request to file late appeal, considering only the circumstances leading to the failure to file a notice of appeal in a timely manner); *Huennekens v. Marx (In re Springfield Contracting Corp.)*, 156 B.R. 761 (Bankr. E.D.Va.1993) (denial of request to file late appeal based upon analysis limited to the reason for delay factor).

The reasons for the prominence of the "reason for delay" factor are quite plain. The first two *Pioneer* factors, i.e., prejudice to non-movant and length of delay, invariably favors the party requesting permission to file a late appeal. Due to the strict time constraints governing appeals contained in Fed. R.App. P. 4 and Fed. R. Bankr.P. 8002, "delay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir.), *cert. denied*, 531 U.S. 929, 121 S.Ct. 309, 148 L.Ed.2d 248 (2000). Thus, knee jerk consideration of the first two *Pioneer* factors would improvidently skew the balance towards virtual unbridled allowance of out-of-time appeals. The third *Pioneer* factor, the good faith of movant, is rarely at issue in requests to file late appeals. *Silivanch*, 333 F.3d at 366.

In the case at bar, the prejudice to non-movant Plaintiff arising from the Debtors' filing of the Extension Motion on February 1, 2005, two weeks late, is almost nil and any delay caused is minimal both in actual and relative terms. Plaintiff makes no charges of an absence of good faith in the filing of the Extension Motion by the Debtors. Thus, the reason for delay is our critical focus of inquiry.

## III.

The Debtors' showing of excusable neglect is uncomplicated. The Debtors stress that they are *pro se* Chinese immigrants with limited knowledge of the English language and none of the American judicial system. Consequently, they argue they were unaware of their options or relevant deadlines at the time they first learned of the Order Denying Discharge, and let the January 18, 2005 deadline slip by without initiating the appeal process. They first consulted with counsel, the Levi Firm, on January 28, 2005. The Levi Firm acted swiftly and within two business days after their retention, on February 1, 2005, filed the Extension Motion.

Preliminarily, we would point out that inquiry under Fed. R. Bankr.P. 8002(c) is focused on conduct of the Debtors prior to expiration of the ten day period under Fed. R. Bankr.P. 8002(a), as distinguished from that occurring outside of the period, since a late filing is only permitted under the Rule where it can be shown that the initial filing deadline of Fed. R. Bankr.P. 8002(a) was missed due to "excusable neglect."

The Debtors' efforts to persuade this Court that their failure to meet the ten day filing deadline falls within the rubric of excusable neglect is unavailing. The Debtors are no strangers to litigation in the federal courts. They have litigated their disputes with the Plaintiff in this Court and the District Court for nearly five years. In this Court, they have not been diffident or quiescent *pro se* Debtors. The Debtors fought Plaintiff every step of the way with extraordinary vigor, filing voluminous papers in English, appearing at all hearings and conferences and taking positions in the litigation. It may well be that the Debtors know more English than they admit and/or they are the beneficiaries of undercover consultants or advisers.

Moreover, there elapsed a period of more than one year during which Plaintiff's motion for summary judgement was *sub judice*. Surely, the Debtors had more than ample time to assess their options and map their strategies, if their opposition to the motion for summary judgment was not sustained. Under all these circumstances, their neglect to meet the ten day deadline cannot be deemed excusable.

The Debtors showing of excusable neglect boils down to an assertion that they were understandably ignorant of the rules of bankruptcy procedure and therefore could not have known of the ten day deadline. Without probing the factual underpinning of this justification, we nonetheless reject this argument. *Pioneer* states that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392, 113 S.Ct. 1489. Moreover, the Second Circuit has emphasized that "[t]he excusable neglect standard can never be met by a showing of inability ... to read and comprehend the plain language of the federal rules." *Weinstock*, 16 F.3d at 503 (*quoting In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985)) (internal quotation marks omitted); *see also Silivanch*, 333 F.3d at 369.

The above observation of the Supreme Court in *Pioneer* and admonition of the Second Circuit in *Cosmopolitan Aviation, Weinstock* and *Silivanch*, all of which involved attorneys, is also applicable to *pro se* litigants. The Supreme Court has instructed courts to hold pleadings filed by *pro se* litigants to a less stringent standard than those filed by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), but has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

## IV.

This bankruptcy case and the adversary proceeding brought thereunder objecting to discharge and dischargeability have been closed. A case or proceeding may be reopened under 11 U.S.C. § 350(b) "to accord relief to the debtor or for other cause." Since the Debtors failed to sustain their burden of demonstrating excusable neglect to justify the allowance of a late appeal, we are unable to accord any relief to the Debtors. Nor do we perceive any other cause for reopening matters that have been closed.

## V.

Based on all of the foregoing, the request of the Debtors for authorization to file an out-of-time appeal is denied. The requests of the Debtors to reopen Bankruptcy Case No. 101–25054–353 and Adversary Proceeding No. 102–1034–353 is also denied.

**IT IS SO ORDERED**